BREAD POLITICAL ACTION COMMITTEE ET AL. *v*.
FEDERAL ELECTION COMMISSION ET AL.

No. 80–1481.   Argued January 19, 1982—Decided March 8, 1982

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Jeffrey Cole* argued the cause for appellants. With him on the briefs was *Stanley T. Kaleczyc.*

*Charles N. Steele* argued the cause for appellees. With him on the brief was *Richard B. Bader.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Section 310(a) of the Federal Election Campaign Act of 1971 (FECA), 88 Stat. 1285, as amended, 2 U. S. C. § 437h(a) (1976 ed., Supp. IV), lists three categories of plaintiffs who may challenge the constitutional validity of FECA in specially expedited suits: (1) the Federal Election Commission (FEC), (2) "the national committee of any political party," and (3) "any individual eligible to vote in any election for the office of President." In this case, we address a question we expressly reserved in *California Medical Assn.* v. *FEC*, 453 U. S. 182, 187, n. 6 (1981): whether a party not belonging to one of the three categories listed in § 437h(a) may nonetheless invoke its procedures.

I

The appellants are two trade associations and three political action committees (PAC's): the National Restaurant Association and its associated PAC, the Restaurateurs Political Action Committee, the National Lumber and Building Material Dealers Association and its associated PAC, the Lumber Dealers Political Action Committee, and the Bread Political Action Committee, the PAC associated with the American Bakers Association. In order to challenge the validity of 2 U. S. C. § 441b(b)(4)(D), which has the effect of limiting the extent to which trade associations and their PAC's may solicit funds for political purposes,[1] the appellants filed an ac-

---

[1] Title 2 U. S. C. § 441b(b)(4)(D) permits an incorporated trade association to solicit contributions to its (PAC) only from

"the stockholders and executive or administrative personnel of the member corporations of such trade association and the families of such stockholders or personnel to the extent that such solicitation of such stockholders and personnel, and their families, has been separately and specifically approved

tion in the United States District Court for the Northern District of Illinois, seeking expedited consideration of their suit under the procedures set forth in § 437h.[2] The District Court denied certification under § 437h on the ground that the plaintiff trade associations and PAC's do not belong to

---

by the member corporation involved, and such member corporation does not approve any such solicitation by more than one such trade association in any calendar year."

Other provisions of FECA permit a trade association to solicit contributions to its PAC from its members, § 441b(b)(4)(C), and from its own executive and administrative personnel and their families, § 441b(b)(4)(A).

[2] That section provides:

"(a) Actions, including declaratory judgments, for construction of constitutional questions; eligible plaintiffs; certification of such questions to courts of appeals sitting en banc

"The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.

"(b) Appeal to Supreme Court; time for appeal

"Notwithstanding any other provision of law, any decision on a matter certified under subsection (a) of this section shall be reviewable by appeal directly to the Supreme Court of the United States. Such appeal shall be brought no later than 20 days after the decision of the court of appeals.

"(c) Advancement on appellate docket and expedited disposition of certified questions

"It shall be the duty of the court of appeals and of the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any matter certified under subsection (a) of this section." 2 U. S. C. §§ 437h(a)–(c) (1976 ed. and Supp. IV).

The grant of standing to the three listed categories of plaintiffs is similar to the grant Congress had adopted earlier in 26 U. S. C. § 9011(b) authorizing the "Commission, the national committee of any political party, and individuals eligible to vote for President" to bring suits to implement or construe the Presidential Election Campaign Fund Act, 26 U. S. C. §§ 9001–9013.

any of the three categories of plaintiffs listed in § 437h(a) as eligible to invoke its expedited procedures. On an interlocutory appeal from this ruling, a panel of the Court of Appeals reversed, holding that § 437h(a) is available for use by plaintiffs whether they belong to an enumerated category or not. 591 F. 2d 29 (CA7 1979). On remand, the District Court, as required by § 437h, first made findings of fact and then certified the case back to the Court of Appeals sitting en banc for a determination on the constitutional questions raised by the appellants. The en banc court declined to overrule the earlier panel decision regarding the reach of § 437h(a), and proceeded to the merits of the appellants' claims, upholding the constitutionality of the challenged provisions. 635 F. 2d 621 (CA7 1980). The present appeal to this Court followed, confronting us with the question whether § 437h(a) should be construed to permit parties, such as the appellants, who do not belong to one of its three specifically enumerated classes, nonetheless to invoke its procedures.

## II

Our analysis of this issue of statutory construction "must begin with the language of the statute itself," *Dawson Chemical Co.* v. *Rohm & Haas Co.*, 448 U. S. 176, 187 (1980), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980). Moreover, when the statute to be construed creates, as § 437h does, a class of cases that command the immediate attention of this Court and of the courts of appeals sitting en banc, displacing existing caseloads and calling court of appeals judges away from their normal duties for expedited en banc sittings, close construction of statutory language takes on added importance. As we have said: "Jurisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes'; and we are particularly

prone to accord 'strict construction of statutes authorizing appeals' to this Court." *Palmore* v. *United States*, 411 U. S. 389, 396 (1973) (citations omitted). In short, the plain language of § 437h(a) controls its construction, at least in the absence of "clear evidence," *United States* v. *Apfelbaum*, 445 U. S. 115, 121 (1980), of a "clearly expressed legislative intention to the contrary," *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, *supra*, at 108.

The text of § 437h(a) states plainly enough which plaintiffs may invoke its special procedures: "The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President." Thus, § 437h(a) affords its unique system of expedited review to three carefully chosen classes of persons who might meet the minimum standing requirements of Art. III. The only artificial persons expressly entitled to invoke § 437h(a) are the Federal Election Commission, which is charged with enforcing the Act, and the national committees of political parties, which play a central role in the political process.

In the face of the obvious meaning of the language of § 437h(a), the appellants urge what they concede to be an "expansive construction" of the section. Reply Brief for Appellants 3. Indeed, the construction they advocate could not be more expansive, for they apparently argue that Congress intended the class of permissible plaintiffs to be defined by the outermost limits of Art. III. The appellants, however, fall far short of providing "clear evidence" of a "clearly expressed legislative intention" that the unique expedited procedures of § 437h be afforded to parties other than those belonging to the three listed categories.

In fact, the section's legislative history is too brief and ambiguous to provide much solace to either side of the present controversy. When Senator Buckley introduced the section during the deliberations on the Federal Election Campaign Act Amendments of 1974, he limited his explanation to the following comments:

"[I]t is a modification that I am sure will prove acceptable to the managers of the bill. It merely provides for the expeditious review of the constitutional questions I have raised. I am sure we will all agree that if, in fact, there is a serious question as to the constitutionality of this legislation, it is in the interest of everyone to have the question determined by the Supreme Court at the earliest possible time." 120 Cong. Rec. 10562 (1974).[3]

In the House, Representative Frenzel echoed this theme in responding to a question from another Member of the House about the constitutionality of the Amendments:

"Any time we pass legislation in this field we are causing constitutional doubts to be raised. I have many myself. I think the gentleman has pointed out a good one. We have done the best we could to bring out a bill which we hope may pass the constitutional test. But, we do not doubt that some questions will be raised quickly.

"I do call the attention of the gentleman to the fact that any *individual* under this bill has a direct method to raise these questions and to have those considered as quickly as possible by the Supreme Court." *Id.*, at 35140 (emphasis added).

---

[3] Perhaps because Senator Buckley's intent as expressed in the legislative history remains uncertain, the appellants have submitted to this Court affidavits from Senator Buckley and David A. Keene, the Executive Assistant to the Senator who prepared the original draft of § 437h, expressing the belief that the amendment was not intended to exclude organizations from challenging the constitutionality of the Act. See Affidavit of James Buckley (Nov. 11, 1977), reprinted at App. 110, 112; Affidavit of David A. Keene (Oct. 21, 1977), reprinted at App. 106, 109.

We cannot give probative weight to these affidavits, however, because "[s]uch statements 'represent only the personal views of th[is] legislato[r], since the statements were [made] after passage of the Act.'" *Regional Rail Reorganization Act Cases*, 419 U. S. 102, 132 (1974), quoting *National Woodwork Manufacturers Assn.* v. *NLRB*, 386 U. S. 612, 639, n. 34 (1967). See also *Quern* v. *Mandley*, 436 U. S. 725, 736, n. 10 (1978), in which we noted that "*post hoc* observations by a single member of Congress carry little if any weight."

These brief remarks by two Members of Congress nearly exhaust the legislative history of the section. The appellants nevertheless suggest that these comments suffice to prove that, in passing § 437h, Congress focused solely on expediting the resolution of all disputes over the constitutionality of FECA, and was unconcerned with the identity of the challenging plaintiffs. In support of this view, the appellants point out that in the first sentence of § 437h(a) Congress authorized suits to challenge "any" provision of the Act, while the second sentence requires the district courts to certify "all" constitutional questions under the Act to the court of appeals sitting en banc. According to the appellants, the fact that Congress expressly extended § 437h to "all" constitutional questions about "any" provision of the Act compels the inference that Congress also intended that § 437h be afforded to any and all plaintiffs, even those not expressly listed in the Act.

The obvious fact that Congress wanted a broad class of questions to be speedily resolved, however, scarcely implies that Congress intended the courts to augment Congress' enumeration of qualified plaintiffs. Indeed, if it suggests anything, the structure of the Act suggests that Congress knew how to specify that "all" constitutional questions about "any" provision of the Act may be raised, and therefore could as easily have directed that "any" person might invoke the unique procedures of § 437h. But Congress did not do so. Instead, it went to the trouble of specifying that only two precisely defined types of artificial entities and one class of natural persons could bring these actions.

Reaching out for some support, the appellants hypothesize that Congress specified the three enumerated classes to remove any doubts about their standing, but not to exclude others by implication. According to the appellants, absent explicit congressional authorization, the members of the three listed classes might not meet the prudential standing requirements this Court imposes. See, *e. g.*, *Warth* v. *Seldin*, 422 U. S. 490, 498–501 (1975). This argument, however, puts

the appellants in the awkward position of simultaneously noting that express congressional authorization is required to overcome prudential standing limitations, while urging us to read an implicit grant of standing into congressional silence. Of course, had Congress intended the result the appellants desire, it could easily have achieved it by expressly granting standing to the limits of Art. III, and then listing as specific examples the three classes now enumerated in § 437h(a). Instead, Congress gave no affirmative indication that it meant to include in its grant any parties beyond the three listed classes.

For these reasons, we cannot impute to Congress the intention to confer standing on the broadest class imaginable. We do not assume the maximum jurisdiction permitted by the Constitution, absent a clearer mandate from Congress than here expressed. We therefore hold that only parties meeting the express requirements of § 437h(a) may invoke its procedures. Because the appellants do not meet these requirements, they may not invoke the expedited procedures of § 437h. .

The appellants complain that the practical result of this ruling may be that some provisions of FECA will escape expedited review, thereby defeating Congress' intent that the courts pass as quickly as possible on the validity of FECA. Without a clearer indication of congressional intent than provided by the extremely sketchy legislative history of § 437h, however, we believe the best evidence of what Congress wanted is found in the statute itself, where Congress listed only three types of parties who may invoke the expedited procedures of § 437h. Others, evidently, are remitted to the usual remedies.

We note, moreover, that our decision today raises no threat that an aggrieved party with standing will be unable to litigate questions arising under FECA, since our holding affects only the availability of the extraordinary procedures afforded by § 437h. Section 437g, for example, permits ei-

ther the Commission or, under the proper circumstances, a private person to bring a civil action to enforce the Act, and such suits are themselves given expedited treatment under § 437g(a)(10), being advanced on the calendar ahead of all other actions except those given even higher priority by either § 437g or § 437h. Thus, any challenge, constitutional or nonconstitutional, may be raised as a defense in an enforcement action, and will be afforded expedited review.[4] Furthermore, plaintiffs meeting the usual standing requirements can challenge provisions of the Act under the federal-question jurisdiction granted the federal courts by 28 U. S. C. § 1331 (1976 ed., Supp. IV).[5]

In sum, the appellants have not met the burden of showing such "clear expression" or "clear evidence" of congressional intent to make the procedures of § 437h available to categories of plaintiffs other than those listed in that section. Accordingly, we reverse and remand for proceedings consistent with this opinion.

*So ordered.*

---

[4] The appellants suggest that an anomaly is thereby created, unless parties not listed in § 437h(a) can invoke that section's procedures, because nonconstitutional challenges raised as defenses will be granted expedited service under 2 U. S. C. § 437g(a)(10) (1976 ed., Supp. IV), while constitutional challenges brought by plaintiffs not listed in § 437h(a) will be treated like any other case on the docket. No evidence exists that Congress ever pondered this subtlety, or, if it did, what it thought about it. Suffice it to say that we do not consider the possibility that Congress may have seen fit to expedite claims raised by defendants, but not similar claims raised by some plaintiffs, to shed much light on Congress' purpose in enumerating three specific classes of eligible plaintiffs in § 437h(a).

[5] We express no opinion, however, on the question whether the appellants meet the standing requirements under § 1331.