ANNIE DUCKWORTH, Plaintiff-Appellant, *v.* JEFFREY C. MILLER, Director, The Department of Public Aid *et al.*, Defendants-Appellees.
Fourth District No. 4—84—0246

Opinion filed October 3, 1984.

George Bell and Valerie McWilliams, both of Land of Lincoln Legal Assistance Foundaion, Inc., of Champaign, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Vincenzo Chimera, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
Suspension of ADC payments.
We affirm.
The facts are few: In May of 1982 Duckworth's son was killed in an automobile accident. A wrongful death action was filed, resulting in a settlement of $8,500. This sum equaled 35 months' worth of Duckworth's payments under the State Aid to Families with Dependent Children program (AFDC). Upon learning of the settlement, the Illinois

Department of Public Aid (IDPA) suspended payments based on her receipt of the $8,500 settlement. She continued to receive payments based on the need of a brother who was living with her.

Duckworth appealed the suspension of payments by IDPA, arguing that the Illinois provisions which were applied to her were contrary to the controlling Federal statute (42 U.S.C. sec. 601 *et seq.* (1982)) in that the provisions could only be applied to persons having earned income, whereas there was no question that Duckworth had never earned anything during the pertinent time period.

A final administrative decision upheld the original decision of IDPA. Plaintiff then filed the complaint from which this appeal stems, seeking judicial review of the final administrative decision. Her complaint raised numerous matters not raised before this court but again alleged that IDPA's actions did not come within the purview of the Federal statute because she had no earned income during the requisite period or—in fact—at all.

The trial court then entered a memorandum opinion and judgment which found the Illinois regulation consistent with the Federal statute and affirmed the final administrative order. A motion for rehearing was heard and denied, and this appeal followed.

Our disposition of this cause rests upon statutory interpretation. The United States Congress, seeking to aid and strengthen the familial relationships of the poor, enacted the AFDC program. Since then it has burgeoned into a sprawling morass of bureaucracy funneling money to the States for distribution in accordance with programs established by the various State legislatures. In response to the problem of the largess which the program had assumed, Congress has modified it through various amendatory acts. The modification of concern to us was added by the Omnibus Budget Reconciliation Act of 1981 (OBRA) (Pub. L. 97—35 (1981)), the main thrust of which patently was to reduce the outlay of Federal dollars targeted for social programs.

One specific aspect of OBRA concerns us, that being the way in which States are to treat nonrecurring lump-sum cash influxes accruing to persons receiving Federal support payments. Prior to the enactment of OBRA, such influxes affected payments for the month in which they were received, but upon being spent the influx was forgotten. Under the new program, the influx was to be compared to the support payments and then to take the place of the concomitant number of payments which the influx equaled. The only issue in this appeal is whether the new provisions are meant to apply only to persons who have some (but definitionally not much) earned income, or to all recipients regardless of the existence of earned income.

To decide the matter, as in all cases of statutory interpretation, we turn first to the words of the statute itself. Three sections are relevant to our discussion. Section 2302 of OBRA (42 U.S.C. sec. 602(a)(7) (1982) sets forth the basic elements to be used in determining a recipient's need. It reads in pertinent part:

"[E]xcept as may be otherwise provided in paragraph (8) or (31) and section 615 of this title, [the State plan shall] provide that the State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid."

Section 2304 of OBRA (42 U.S.C. sec. 602(a)(17)(1982)) deals with the receipt of a lump-sum influx of cash and reads in pertinent part as follows:

"[The State plan shall] provide that if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all the other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A)."

The question we are called upon to decide is whether Congress intended section 17 of OBRA (the lump-sum sections) to apply to persons *without earned income.*

We note initially that section 17 refers specifically to "a person specified in paragraph (8)(A)(i) or (ii)." Paragraph (a)(8)(A)(i) compels the State agency, in assessing need, to disregard all the earned income of each dependent child who is a full-time student or a part-time student who is not a full-time employee. Paragraph (8)(A)(ii) compels the State agency to disregard the first $75 of any earned income of any

child or relative applying for or receiving welfare, or *of any other individual* (living in the home) whose needs are taken into account in determining the AFDC units' need.

Duckworth's argument is that by specifically referring to earned income exclusions in establishing the requisite persons to whom the lump-sum procedure is to be applied, Congress implicitly restricted the application of the lump-sum provisions to those recipients of AFDC having some earned income. From this, the argument flows that since she, Duckworth, at no time had earned income, the lump-sum provisions were improperly applied to her by the State. It is well established that where State provisions mandated by a Federal statute are without the purview of the Federal statute, the application of such provisions are invalid. See *King v. Smith* (1968), 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128.

The State responds that the legislative scheme is manifestly ambiguous and that therefore recourse to the legislative history accompanying the Federal legislation is appropriate. The argument goes on that the legislative history amply demonstrates Congress' intent to save money through this legislation. The argument concludes that adopting Duckworth's suggested interpretation would be contrary to Congressional intent and that therefore we must reject it. The argument pends on the undisputed postulate that in matters of statutory interpretation our posture as a reviewing court is to assure that the intent of the legislature is carried out no matter how difficult the particular legislative body makes the task.

With this in mind, we turn to our appointed duty. First, we reluctantly accept the State's invitation to turn to the legislative history of the Act, since the words of the statute have little independent meaning and even less internal consistency or cohesion.

In 1981, Congress adopted House Concurrent Resolution 115, which mandated a dramatic change in the spending policies that had dominated the Federal budget for the past 25 years. New spending targets for the fiscal years 1981 through 1984 contained proposals which would result in a cut of more than one-half in the average annual growth in Federal spending of the past five years. In order to achieve the fiscal policies set forth in the concurrent resolution, Congress included in that resolution instructions to 15 House committees and 14 Senate committees to recommend changes in laws which would reduce budgetary authority by 189 billion dollars, and cut spending by 141.6 billion dollars in the fiscal years 1981 through 1984. See 1981 U.S. Code Cong. & Ad. News, vol. 2, at 396-97.

Turning again to the U.S. Code Congressional and Administrative

News, we see that the Senate Committee on Finance, which oversees Title IV-A of the Social Security Act, explained:

"The Committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility. The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months. Thus, if such income exceeded the standard of need in the month of receipt, the family would be ineligible in that month. In addition, any amount of the income that exceeds the initial month's needs standard would be divided by the monthly needs standard, and the family would be ineligible for aid for the number of months resulting from that calculation." (Senate Report No. 97–139, 97 Cong., 1st Sess., June 17, 1981, reprinted in (1981) U.S. Code Cong. & Ad. News vol. 2, at 771.)

The Federal regulations enacted by the Secretary of Health and Human Services parallel this statement of legislative intent. Found at 45 CFR 233.20(a)(3)(ii)(D)(1982), the final regulation provides:

"Net income, except as provided in paragraph (a)(3)(xiii) of this section, and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of receipt of the nonrecurring income or, at State option as late as the corresponding payment month. For purposes of applying the lump sum provision, family includes the AFDC assistance unit and any other individual whose lump sum income is counted in determining the period of ineligibility." 47 Fed. Reg. 5678, codified at 45 CFR sec. 233.20(a)(3)(ii)(D) (1982).

The IDPA adopted IDPA Rule 3.387, which is a virtual carbon copy

of the Federal regulation just mentioned.

To date, three Federal courts of review have considered the question now before us. All three have come to the conclusion that the lump-sum rule is properly applied to all AFDC recipients, not just those with earned income. See *Sweeney v. Murray* (1st Cir. 1984), 732 F.2d 1022; *Faught v. Heckler* (8th Cir. 1984), 736 F.2d 1235; *Walker v. Adams* (6th Cir. 1984), No. 83—5527, slip op. Aug. 23, 1984.

Additionally, Congress has now acted to clarify the application of the Act. Through the amendment process, Congress struck out the portion of section 602(A)(17) which previously referred to "a person specified in paragraph 8(A)(i) or (ii)" and substituted "a child or relative applying for or receiving aid to families with dependent children, or *any other person whose need the State considers* when determining the income of a family." (Emphasis added.) (Deficit Reduction Act of 1984, Pub. L. No. 98—369, sec. 2632(b)(1), reported in 1984 U.S. Code Cong. & Ad. News, 98 Stat. 1141.) Plaintiff here is clearly a person whose need is considered by the State in determining the income of a family. Congress also amended the language of the first clause of section 602(A)(17) by including both earned and unearned income within the concept of the lump sum influxes of money.

When these points were presented in oral argument before this court, plaintiff urged the court to disregard the clarifications as after-the-fact statements made by members of Congress and therefore precluded from consideration under the case of *Bread Political Action Committee v. Federal Election Committee* (1982), 455 U.S. 577, 71 L. Ed. 2d 432, 102 S. Ct. 1235. However, the action of amendment is much more than an after-the-fact statement made by a legislator which was at issue in the *Bread* case. In fact, the United States Supreme Court has specifically sanctioned the consideration of amendatory actions of Congress which are intended to clarify prior statutes. See *Red Lion Broadcasting Co. v. Federal Communications Com.* (1969), 395 U.S. 367, 23 L. Ed. 2d 371, 89 S. Ct. 1794.

Accordingly, we now join those Federal courts of review which have come down on the cost-cutting side of this issue. In our view, the paramount concern in this area of legislation was the conservation of all too scarce resources. To allow recipients to rapidly dissipate funds acquired from other sources, only to fall back upon the government as a source of income, would be counterproductive to a self-sufficient economy.

Affirmed.

GREEN and WEBBER, JJ., concur.