**James Edward ANTOSH, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. No. 85–2036.**

United States District Court, District of Columbia.

April 4, 1986.

Michael E. Avakian, Center on National Labor Policy, Inc., North Springfield, Va., for plaintiff.

Lisa E. Klein, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This case, arising under the Federal Election Campaign Act ("FECA" or "Act"), 2 U.S.C. §§ 431–455, is before the Court on the parties' cross-motions for summary judgment.[1] The material facts are not in dispute and, for the reasons set forth below, the Court will grant defendant's motion for summary judgment, deny plaintiff's, and dismiss the complaint with prejudice.

Plaintiff Antosh seeks a judgment declaring that the failure of the Federal Election Commission ("FEC" or "Commission") to act favorably upon his administrative complaint of political fundraising improprieties was arbitrary and capricious, or contrary to law. In his complaint to the Commission Antosh charged that the reelection committee of a U.S. Senator from Arizona had violated the Act by accepting excessive cash contributions which the Act required it to refund. The Commission found no violation by the reelection committee and ordered no refund.

Plaintiff is a businessman and a resident of and a registered voter in Oklahoma. In April, 1984, he filed a complaint with the FEC alleging that the Engineers Political Education Committee/International Union of Operating Engineers ("EPEC") had made aggregate contributions to Sen. DeConcini's reelection committee in connection with a 1982 primary which exceeded the limits imposed by the Act. Specifically, plaintiff asserted that EPEC had made, and the committee had accepted, $7,250 in contributions during the 1981–82 election cycle, some $2,250 more than permitted by 2 U.S.C. § 441a(a)(2)(A).[2] The Commission found that EPEC and its treasurer, as donors, had violated section 441a(a)(2)(A), but it failed to find that the reelection committee had violated the donee's counterpart provision, 2 U.S.C. § 441a(f).[3] Thereafter,

---

1. The Court has subject matter jurisdiction under 2 U.S.C. § 437g(a)(8)(A).

2. Section 441a(a)(2)(A) provides that "[n]o multicandidate political committee shall make contributions to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $5,000 ...."

3. Section 441a(f) forbids a candidate from "knowingly accept[ing] any contribution ... in violation of the provisions of this section ...."

the FEC approved a conciliation agreement proposed by EPEC by which EPEC would pay a $600 fine and admit its own violation, but would not require the reelection committee to refund the surplus. Plaintiff filed the instant suit objecting to that disposition on June 21, 1985.

The cross-motions present three issues: plaintiff's standing to maintain this action; the Court's jurisdiction to review the Commission's ruling; and the merits of the Commission's determinations. Because the Court finds that plaintiff lacks standing, it does not reach the latter issues.

Plaintiff premises his standing under the Act upon what he regards as an unsatisfactory termination of his administrative complaint and the language of the statute under which he brought it, which provides that "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party ... may file a petition with the United States District Court for the District of Columbia." 2 U.S.C. § 437g(a)(8)(A). Plaintiff, being thus a "party aggrieved," contends that he is given the right by statute both to make an administrative complaint and to appeal the outcome, the former being meaningless without the availability of judicial review.

■ Congress, however, may only "gran[t] standing to the limits of Art[icle] III...." *Bread Political Action Committee v. FEC*, 455 U.S. 577, 584, 102 S.Ct. 1235, 1239, 71 L.Ed.2d 432 (1982).[4] For Article III standing, a plaintiff must satisfy at least three threshold requirements, the first of which being that he " 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant....' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). His injury must also be " 'fairly [traceable] to the chal-

lenged action ...' " and " 'likely to be redressed by a favorable decision[.]' " *Id.*

■ Plaintiff fails to satisfy the first requirement. As one who lives, works, and votes in Oklahoma, he has no greater interest in the election of a U.S. Senator from Arizona than the rest of the populace elsewhere than in Arizona, i.e., the interest all citizens presumably have in common in uncorrupted elections and the proper administration of the campaign laws in a sister state. Plaintiff may well care more about the integrity of the political process than others; his persistence before the FEC and this Court attests to his concern. Nevertheless, he has suffered no greater injury, nor likely will he in the future, as a result of the Commission's failure to order a refund, than any other U.S. citizen who is neither a resident of nor with franchise in Arizona.

Antosh maintains that his standing is implicitly established by the decisions on the merits in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and *International Association of Machinists and Aerospace Workers v. FEC*, 678 F.2d 1092 (D.C.Cir.1982) (en banc), but neither case is apposite for his purpose. In *Baker v. Carr* the Supreme Court found that the plaintiffs had standing to challenge a Tennessee voting district apportionment scheme, but only after determining that each was a Tennessee resident qualified to vote for members of the state's general assembly who were to represent his county. Their alleged injuries were both direct and palpable—the plan "disfavor[ed] the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality *vis-a-vis* voters in irrationally favored counties." 369 U.S. at 207–08, 82 S.Ct. at 705. Similarly, in *International Association of Machinists and Aerospace Workers*, the plaintiff union alleged that amendments to the FECA unconstitutionally diminished its influence

---

**4.** *See also Synar v. United States*, 626 F.Supp. 1374, 1379 (D.D.C.1986) (three judge panel) ("Congress may not abrogate the constitutional limitations imposed by Article III upon the pow-

er of the federal courts"), *probable jurisdiction noted*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986).

*qua* union in national elections *vis-a-vis* corporations. It did not assert any right to speak collectively for its members who disliked the prospect of unfair elections generally. Here, by contrast, plaintiff has no interest save his own, which is, at the moment, only that of a public-spirited spectator of Arizona elections.

 The constitutional requirement of standing demands more to qualify one as an "aggrieved party" for purposes of judicial review than the statutory right to participate in administrative proceedings themselves. *See Option Advisory Service, Inc. v. SEC,* 668 F.2d 120, 122 (2d Cir.1981). Administrative agencies are not bound by Article III, and Congress can permit anyone it wishes to engage in proceedings before them. But it cannot confer upon any participant at the administrative level the right to maintain a suit to review the agency's decision in federal court, no matter how grievously he may be offended by it, irrespective of the nature of the injury it does him. Neither Congress nor this Court may ignore the constitutional principle of standing.

For the foregoing reasons, therefore, it is, this 4th day of April, 1986,

ORDERED, that plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.