**MORECO ENERGY, INC., Plaintiff,**

v.

**PENBERTHY–HOUDAILLE, Defendant.**

No. 86 C 29053.

United States District Court,
N.D. Illinois, W.D.

March 24, 1988.

Kevin T. McClain, Immel, Zelle, Ogren, McClain & Germeraad, Springfield, Ill., for plaintiff.

Stuart R. Lefstein, Katz, McAndrews, Durkee, Balch & Lefstein, P.C., Rock Island, Ill., Neil R. Mitchell, Gregory C. Ward, Nisen, Elliott & Meier, Chicago, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

The plaintiff, Moreco Energy, Inc., filed its amended complaint against the defendant, Penberthy–Houdaille, Inc., alleging an ongoing violation of the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq. ("TSCA"). The suit is one for private enforcement of TSCA pursuant to 15 U.S.C. Section 2619. Section 2619(a)(1) allows a civil action against any person "who is alleged to be in violation of this chapter or any [standard of the EPA]." 15 U.S.C. § 2619(a)(1).

On July 20, 1987, this court dismissed the original complaint for failure to state a claim. *Moreco Energy, Inc. v. Penberthy–Houdaille, Inc.*, 682 F.Supp. 931 (N.D.Ill. 1987). In adopting the First Circuit's reasoning in *Pawtuxet Cove Marina, Inc., v. Ciba–Geigy Corp.*, 807 F.2d 1089 (1st Cir. 1986), this court held that the plaintiff in a citizen's suit must allege an ongoing violation of TSCA. Because the court found that the plaintiff had alleged past violations only, the court dismissed the complaint with leave to amend.

This case now comes before the court on Penberthy's motion to dismiss the amended complaint. For the reasons set forth below, the court denies the motion.

## FACTS

For purposes of the motion to dismiss the court accepts as true the following facts as alleged in the amended complaint. *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir.1978).

The plaintiff, Moreco Energy, reprocesses used motor oil. In November 1984, Moreco entered into an agreement with Penberthy whereby Moreco would pick-up and remove "waste oil" from Penberthy's facility at Prophetstown, Illinois. Pursuant to the agreement, Moreco on November 2, 1984, picked-up approximately 7600 gallons of waste oil from Penberthy's Prophetstown facility. The oil was mixed with other waste oil in the plaintiff's tanker, was taken to Moreco's storage facility in Rock Island, Illinois, and was there placed into storage tanks.

Unknown to Moreco at the time of pick-up, Penberthy's waste oil contained concentrations of polychlorinated biphenols (PCBs) in excess of 50 parts per million, in violation of TSCA standards. *See,* 40 CFR § 761.20 (1987).

Because Moreco never agreed to accept PCB contaminated waste oil, Moreco immediately upon discovery of the contamination

notified Penberthy to retrieve the oil from Moreco's facility. The defendant refused and still refuses to retrieve the oil. Moreco filed its amended complaint alleging breach of contract and an ongoing violation of 40 CFR Section 761.65. The issue before the court is whether the facts, if true, evidence a violation of Section 761.65. More specifically, the court must decide whether Penberthy, a generator of PCB contaminated material, has a duty of disposal under Section 761.65 once it delivers the PCB contamined oil to a third-party.

## DISCUSSION

Section 2605(e) of TSCA prohibits, with exceptions, the manufacturing, processing, distribution in commerce, or use of PCBs "in. any manner other than in a totally enclosed manner." 15 U.S.C. § 2605(e)(2)(A). Section 2605(e) also requires the Administrator to promulgate regulations prescribing the methods of marking and disposing of PCBs. 15 U.S.C. § 2605(e)(1)(A) and (B).

Pursuant to Section 2605, the United States Environmental Protection Agency in 1979 adopted rules regulating the manufacture, processing, distribution, use, storage and disposal of PCBs. Those rules are embodied in 40 CFR Section 761. Subpart D of Section 761 is entitled "Storage and Disposal." Section 761.65 is a subsection of subpart D and is entitled "Storage for Disposal". Section 761.65 provides

This section applies to the storage for disposal of PCBs at concentrations of 50 ppm or greater and PCB Items with PCB concentrations of 50 ppm or greater.

(a) Any PCB Article or PCB Container stored for disposal before January 1, 1983, shall be removed from storage and disposed of as required by this part before January 1, 1984. Any PCB Article or PCB Container stored for disposal after January 1, 1983, shall be removed from storage and disposed of as required by Subpart D of this part within. one year from the date when it was first placed into storage.

(b) Except as provided in paragraph (c) of this section, after July 1, 1978, owners or operators of any facilities used for the storage of PCBs and PCB Items designated for disposal shall comply with the following requirements ...

(c) ...

40 CFR Ch. 1 § 761.65

The plaintiff Moreco alleges that Penberthy is, and has been since 1984, "storing for disposal" PCB contaminated oil at Moreco's facility. Penberthy vigorously disagrees and contends that Section 761.65 applies only to owners and operators of disposal facilities. Penberthy further implies in its briefs that it cannot be said to be storing material for disposal once the disposer, in this case Moreco, takes delivery. The issues, then, before this court are (1) whether Section 761.65 imposes any duties on generators or whether it applies only to owners and operators of disposal sites, and. (2) if Section 761.65 imposes duties on generators, under what conditions are those duties imposed?

I. To whom Does Section 761.65 Apply?

The rules of construction which apply to statutes apply also to administrative regulations. *Rucker v. Wabash R.R.*, 418 F.2d 146, 149 (7th Cir.1969). The starting point in construing statutes or regulations is the plain language of the provision in issue. *Bread Political Action Committee v. F.E.C.*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982). In the present case, Section 761.65 does not in plain language designate the person or persons who are under a duty to dispose of PCB contaminated material within the one year deadline. Rather, 761.65(a) is in the passive voice. It provides that any PCB articles stored for disposal "shall be removed from storage and disposed of." Accordingly, the court must look beyond the plain language of subsection (a) to discover upon whom that subsection places a duty of disposal.

Where, as here, a subsection of a regulation is ambiguous, the court will construe the subsection in light of the entire regulation. As the defendant points out, subsections (b) and (c) require "owners or operators of any facilities used for storage of PCBs and PCB Items designated for dis-

posal" to comply with such things as building construction parameters, container specifications, and record-keeping guidelines. The defendant argues that because the remainder of Section 761.65 imposes duties only on owners and operators of storage facilities, then subsection (a), too, imposes duties only upon such entities.

■ This argument has some persuasion but it fails in light of policy considerations and the EPA's own interpretation of Section 761.65. First, the court believes that if the EPA had wanted to limit the subsection (a) duty of disposal to owners and operators it would have done so in plain language. Where particular language is used in one part of a regulation but not in another, the term shall not be implied where excluded. *U.S. v. Heller*, 635 F.2d 848, (Temp.Emerg.Ct. of Appeals 1980) *on remand* 542 F.Supp. 157 (D.Mass.1982) Here, the EPA specifically employed the term "owners or operators" in subsections (b) and (c); in subsection (a), however, it did not. Rather, as noted earlier, the EPA wrote subsection (a) in the passive voice. This court believes that by doing so the EPA manifested its intention to establish broad-range liability for disposal.

■ The EPA's own interpretation of 761.65 supports this conclusion. Were the statute itself at issue here, the agency's interpretation of it would have only persuasive force. *Production Tool v. Employment & Training Admin.*, 688 F.2d 1161, 1165 (7th Cir.1982). The issue before the court, however, is the meaning to be given an agency regulation. The Seventh Circuit has emphasized that an agency's interpretation of its own regulation is controlling unless plainly erroneous or inconsistent with the regulation. *Id.* at 1170–71, citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). In a statement issued November 7, 1983, the EPA set forth its policy with regard to compliance and enforcement of Section 761.65. That statement reads:

Action: STATEMENT OF POLICY

SUMMARY:

This notice announces the Agency's policy on compliance and enforcement of storage for disposal regulations under the polychlorinated biphenyl (PCB) rule (40 CFR Part 761). The regulations prescribe a one year time limit on storage of PCB articles or PCB containers prior to their eventual disposal.

EPA reminds the regulated community of the one year time limit on storage, which began on January 1, 1983, and is enunciating its policy to insure adherence to the regulations. EPA will not extend the one year time limit to allow PCB *waste generators or disposal facilities* additional time to store and dispose of PCB waste. *EPA will allocate liability for failure to meet the one year disposal deadline between the waste generator and disposer.*

\*    \*    \*    \*    \*    \*

SUPPLEMENTARY INFORMATION:

\*    \*    \*    \*    \*    \*

40 CFR 761.65(a) limits storage of PCBs designated for disposal to one year. This requirement also states that "any PCB Article or PCB Container stored for disposal before January 1, 1983, shall be removed from storage and disposed of ... before January 1, 1984. Any PCB Article or PCB Container stored for disposal after January 1, 1983, shall be removed from storage and disposed of ... within one year from the date it was first placed into storage."

*The one year limit is intended to ensure prompt disposal of PCBs. However, some waste generators or intermediate waste handlers may store PCB waste for long periods of time (up to 12 months) before sending it to the disposal facility for ultimate disposal.* As a result, disposal facilities which receive the waste may not have sufficient time to dispose of the waste within the one year time limit.

EPA will allow facilities receiving waste a year *after being put into storage by the generator* an additional 90 days after receipt to dispose of the wastes without incurring enforcement liability. Because

representatives of the two approved, land based commercial incinerators have provided technical data showing that PCB waste is disposed of within 90 days after receipt by the facility, EPA has determined that 90 days are sufficient lead-time for the disposer to receive and dispose of PCB waste. Therefore, if a generator delivers waste to a disposal facility with ninety days or more remaining in the one year deadline, the disposer is responsible for destroying the material before the deadline.

*The liability shifts to the generator* if the material is delivered to the disposal facility with less than ninety-days remaining in the one year allowed for disposal after storage. The disposer, however, will share in the liability if he does not dispose of the waste within 90 days from the date it is received at the disposal facility.

II. Compliance and Enforcement

EPA will direct its enforcement efforts to ensure compliance with the requirements of the PCB disposal regulations. EPA intends to take actions to ensure that all facilities subject to the requirements store, handle and dispose of PCBs properly. Persons who are subject to these regulations should be aware that failure to comply with these regulations properly may subject them to civil or criminal sanctions.

(Emphasis Added).

40 FR 52304 (Nov. 7, 1983).

Clearly, the EPA interprets Section 761.65 as imposing disposal duties on generators as well as on owners and operators of disposal facilities. In saying that it "will not extend the one year time limit ... to allow generators or disposal facilities additional time to store and dispose", the EPA presumes that generators, too, fall within the parameters of Section 761.65(a). The policy statement also speaks of generators putting waste "into storage", and by doing so, tripping the clock on their own liability.

The EPA's policy statement is interpretive of Section 761.65. The interpretation is controlling if it proves to be not plainly erroneous or inconsistent with the regulation. Clearly, the EPA interpretation is neither plainly erroneous nor inconsistent. As the court noted earlier, the regulation in subsection (a) does not expressly tag liability onto only one type of entity. Accordingly, an interpretation of Section 761.65(a) which imposes liability broadly is not inconsistent with the language of the regulation. The court believes, however, that not only is such an interpretation not in conflict with 761.65, it in fact furthers the purpose of 761.65. As the EPA points out in its November 1983 statement, "the one year limit is intended to ensure prompt disposal of PCBs." 40 FR 52302 (Nov. 7, 1983). An interpretation of Section 761.65 which imposes duties upon generators and disposers alike furthers this purpose by coercing all parties involved to take swift action. Indeed, if generators were not subject to the requirements of Section 761.65, they could delay indefinitely the prompt disposal of PCB contaminated material. Accordingly, because the EPA's interpretation is in harmony with the regulation, that interpretation is controlling upon the court. The court holds that Section 761.675(a) imposes a duty of disposal within a one-year time limit[1] upon any entity which "stores for disposal" PCB contaminated items.

II. Is Penberthy "Storing for Disposal" the PCB Contaminated Oil?

■ The next question facing the court is whether the complaint alleges sufficiently that the oil is being stored for disposal for purposes of Section 761.65. Under the regulations, "storage for disposal" means "temporary storage of PCBs that have been designated for disposal." 40 CFR Ch. § 761.3. "Disposal" means to "complete or terminate the useful life of PCBs and PCB items." *Id.* The plaintiff states in the complaint that the oil is "waste" oil and that it has been placed into storage tanks.

---

1. The EPA policy statement implies that the initial storage for disposal by any entity, whether generator, "intermediate waste handler", or owner/operator, will start the running of the one-year time limit. The court expresses no opinion as to Moreco's potential concurrent liability for disposal.

A reasonable inference arises that oil that is considered to be "waste" is oil that is "designated for disposal". The court notes that the discovery process may bear-out a different conclusion. Nevertheless, the facts as alleged in the complaint are taken as true, with the benefit of all reasonable inferences.

The final issue is whether or not the complaint alleges that Penberthy is doing the storing. The plaintiff alleges in its complaint that the defendant Penberthy indeed is the one storing the oil since, by contract, the plaintiff has not legally accepted ownership or control over the PCB contaminated oil. The defendant, on the other hand, argues that because the Rock Island facility where the oil is now located is "owned and controlled" by the plaintiff, the plaintiff is doing the storing. Defendant's Mem. in Support, pg. 5. The defendant further points out that it is the plaintiff Moreco and not Penberthy who is in the business of storage and disposal.

The defendant's arguments beg the issue. According to the complaint, Moreco was under no contractual obligation to store and dispose of PCB contaminated oil. For purpose of the waste oil at issue, then, Moreco was not a storer or disposer. Further, Moreco came under "control" of the PCB contaminated oil without knowledge and without consent. On the facts of the complaint, Moreco enjoys anything but real control; it is an unwilling recipient of toxic material, thrust upon it in breach of contract.[2]

The defendant's arguments fail also for a more fundamental reason. Since Moreco never agreed to take ownership of the contaminated oil, Penberthy remains the owner. Under the common law, ownership of property may be relinquished by abandonment. Where as here, however, a statutory and regulatory scheme imposes responsibilities of ownership which go beyond common law responsibilities, abandonment of ownership cannot be so easily effected. Under Penberthy's analysis it would be a simple matter for a generator to avoid responsibility for proper disposal

merely by announcing that it has relinquished its ownership of PCB items or, as in the present case, merely by delivering the material to an unsuspecting third-party. Such an analysis must fail as against policy and reason. To allow a generator to abandon a PCB item without arranging for proper disposal would contravene the policies underlying TSCA and Section 761.65. As noted earlier, the statute and the regulation seek the prompt and environmentally safe disposal of PCBs.

For these reasons, the court holds that the complaint sufficiently alleges that Penberthy is storing PCB contaminated oil at Moreco's facility in an ongoing violation of 40 CFR Section 761.65.

The motion to dismiss the complaint is denied.

---

2. Again, the court expresses no opinion as to an innocent party's duties under Section 761.65.