**J. Scottie HARRELSON, Plaintiff,**

**v.**

**ELMORE COUNTY, ALABAMA; City of Millbrook, Alabama, Defendants.**

Civ. A. No. 94–A–520–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 3, 1994.

Daniel R. Farnell, Jr., Montgomery, AL, for plaintiff.

Kendrick E. Webb, Alex L. Holtsford, Jr., Montgomery, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is now before the court on the motions to dismiss claims for punitive damages filed by Defendants, the City of Millbrook, Alabama ("the City") and Elmore County, Alabama ("the County"), on May 19, 1994 and June 6, 1994 respectively, and the County's motion to dismiss Count V.

Plaintiff, J. Scottie Harrelson ("Harrelson"), filed this action on May 3, 1994. He alleges *inter alia* violation of the Americans With Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12101 *et seq.*, 42 U.S.C. § 1983, the First, Fourth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, various state laws, and a consent decree. Harrelson seeks compensatory and punitive damages, costs, and attorneys fees. He has properly invoked this court's federal question jurisdiction. 28 U.S.C. § 1331.

For the reasons stated below, the court finds that the City's and the County's motions to dismiss are due to be granted.

## II. BACKGROUND

Harrelson is a paraplegic. He uses a wheelchair for transportation. On two occasions, May 9, 1993 and June 22, 1993, Harrelson was incarcerated in the Elmore County Jail.[1] He alleges that on the first occasion, he was: (1) denied use of his wheelchair and forced to crawl around the cell; (2) not provided with either toilet or shower facilities designed for disabled persons; and (3) not provided cold water in his cell. He also maintains that his requests for assistance were ignored. During his second incarceration, Harrelson alleges: (1) he was forced to use facilities not designed for disabled persons; (2) all water available to him in the cell was extremely hot; and (3) he was forced to sleep in a cell that was too small, which resulted in an injury to his foot and leg.

Subsequently, Harrelson brought this suit and the City and the County filed the instant motions.

## III. STANDARD OF REVIEW

■ A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994) (citation omitted); *see Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable

---

1. On the first occasion, he was held for 36–hours before being released. On the second, he was held for 72–hours before being released.

to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *see Powell,* 914 F.2d at 1463. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

## IV. DISCUSSION

### A. Punitive Damages

In their respective motions, both the City and the County argue that Harrelson's claims for punitive damages should be dismissed. In response, Harrelson contends that (1) *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) does not apply to the case at bar; (2) punitive damages are available under the ADA; and (3) Ala.Code § 6–11–26 does not bar punitive damages under § 1983. Accordingly, the court will address each of these arguments in turn.

### 1. Under § 1983

#### a. The City

In *Fact Concerts,* the Supreme Court held that municipalities are immune from punitive damages in § 1983 suits. 453 U.S. at 271, 101 S.Ct. at 2762. In reaching that conclusion, the court focused on the purpose of such awards; retribution and deterrence. *Id.* at 266–67, 104 S.Ct. at 2759–60. According to the Court, permitting punitive awards to be assessed against a local government would not punish the actual wrongdoer, since innocent taxpayers would ultimately bear the financial burden. *Id.* at 267, 101 S.Ct. at 2759. Similarly, the Court noted that the deterrence rationale largely fails in this context, because to be effective, deterrence should be aimed at the individual actors responsible for the constitutional violation, rather than against a governmental entity which must pass the cost on to the citizenry. *Id.* at 270, 101 S.Ct. at 2761.

In the instant case, Harrelson argues that *Fact Concerts'* bar on punitive damages

should only apply to a certain class of § 1983 claims. He does not, however, define exactly what class of claims it should be limited to.

■ Nevertheless, the holding in *Fact Concerts* is clear: "[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983." 453 U.S. at 271, 101 S.Ct. at 2762. Moreover, neither the Supreme Court nor the Eleventh Circuit has indicated any desire to limit the holding. *See Walters v. City of Atlanta,* 803 F.2d 1135, 1148 (11th Cir.1986) (citations omitted) (interpreting *Fact Concerts* to justify barring punitive damages against a municipality under § 1981). Accordingly, the court declines Harrelson's invitation to limit the holding of *Fact Concerts* and finds that the City's motion to dismiss Harrelson's request for punitive damages under his § 1983 claims against it, is due to be granted.

#### b. The County

Next, Harrelson contends that *Fact Concerts* does not apply to the County. The court disagrees.

In *Hammond v. County of Madera,* the Ninth Circuit concluded that under *Fact Concerts* local governing bodies such as a county are immune from awards of punitive damages. 859 F.2d 797, 803 n. 2 (9th Cir. 1988). *See Davis v. Mason County,* 927 F.2d 1473, 1485 n. 6 (9th Cir.1991) (citations omitted). Similarly, in *Erwin v. County of Manitowoc,* the Seventh Circuit opined that under *Fact Concerts* a governmental body such as a county cannot be liable for punitive damages under § 1983. 872 F.2d 1292, 1299 (7th Cir. 1989) (dicta). Moreover, several district courts have held that based on *Fact Concerts* a county is immune from punitive damages under § 1983. *Greiner v. County of Greene,* 811 F.Supp. 796, 801 (N.D.N.Y.1993); *Falk v. County of Suffolk,* 781 F.Supp. 146, 152 (E.D.N.Y.1991); *Jensen v. Conrad,* 570 F.Supp. 91, 99 (D.S.C.1983), *aff'd,* 747 F.2d 185 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985).[2]

2. To date, the Eleventh Circuit has not addressed this issue. The court, however, finds that the opinions of the Seventh and Ninth Circuits, as well as the various district courts, are well reasoned and believes that the Eleventh Circuit would adopt them.

■ A thorough reading of *Fact Concerts* reveals that its rationale and holding is not limited to cities. Rather, the Court's determination that the goals behind the award of punitive damages, retribution and deterrence, are not achieved by such awards against local governments applies equally to counties. *See Fact Concerts*, 453 U.S. at 266–67, 101 S.Ct. at 2759–60. Assuming arguendo that Harrelson's constitutional rights were violated, an award of punitive damages against the County would not deter the actual wrongdoer(s) and would in fact penalize the residents of the County. *See id.* The court, therefore, concludes that *Fact Concerts'* bar against the award of punitive damages against cities applies to counties as well.

Accordingly, the court finds that the County's motion to dismiss Harrelson's request for punitive damages under his § 1983 claims against it is due to be granted.

### 2. Under the ADA

Harrelson argues that if he is successful in his ADA claim he would be entitled to punitive damages. The court disagrees. Broadly speaking, the ADA guarantees for qualified individuals with disabilities equal opportunity in employment (Title I), equal access to services and benefits provided by state and local governments (Title II), and equal access to goods and services provided by private commercial entities (Title III). ·The final subchapter of the ADA contains a number of miscellaneous provisions, the most significant of which relates to insurance (Title IV). In the case at bar, Harrelson's claim clearly falls under Title II.[3]

■ Resolution of this issue of statutory construction must begin with an analysis of the language of the statute itself. *Bread Political Action Committee v. Federal Election Comm'n*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982) (citation omitted). In the absence of a clearly expressed legislative intention to the contrary, the plain language of the statute controls its construction. *Id.* (citation and quotation marks omitted).

The remedies available to a plaintiff bringing a successful ADA–Title II claim are ultimately set out under 42 U.S.C. § 2000e–5, commonly known as Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 12133; *Raya v. Maryatt Indus.*, 829 F.Supp. 1169, 1171 (N.D.Cal.1993).[4] In sum, Title VII prohibits employers from making discriminatory employment decisions based on an individual's "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The Civil Rights Act of 1991 amended Title VII by providing for the award of compensatory and punitive damages and for a jury trial. 42 U.S.C. §§ 1981a(b) & 1981a(c). The 1991 Act also expressly amended Title I of the ADA by providing for the award of compensatory and punitive damages and for a jury trial. 42 U.S.C. §§ 1981a(a)(2) & 1981(c).[5]

■ On its face, Title II of the ADA does not provide for an award of punitive damages. *See* 42 U.S.C. § 12133. Moreover, Congress' express provision of punitive damages under Title I of the ADA via the Civil Rights Act of 1991, counsels against a statutory construction that punitive damages are available under Title II by inference. *See United States v. Martino*, 681 F.2d 952, 954 (Former 5th Cir.1982) (en banc) (citations omitted), *aff'd*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("where Congress includes particular language in one section of a stat-

---

3. 42 U.S.C. § 12132 (Title II) states:
   Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

4. Section 12133 states:
   The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 [Title II] of this title.
   29 U.S.C. 794a provides that the remedies available under Title VII shall be the remedies available under the Rehabilitation Act of 1973, 29 U.S.C. 701 *et seq.* Thus, the only relevant remedy available to a successful Title II plaintiff is injunctive relief. *See* 42 U.S.C. § 2000e–5(g).

5. 42 U.S.C. § 1981a(a)(2) expressly applies to a violation of 42 U.S.C. § 12112, which constitutes Title I of the ADA.

ute but omits it in another section of the same Act, ... Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Thus, the court finds that punitive damages are not available to a plaintiff asserting a claim under Title II of the ADA. *Outlaw v. City of Dothan,* No. CV–92–A–1219–S, mem. op. at 9 (M.D.Ala. Apr. 27, 1993) (Albritton, J.) (punitive damages only available under Title I of the ADA).

Accordingly, the court concludes that the City's and the County's motions to dismiss Harrelson's request for punitive damages under his ADA claim, are due to be granted.

### 3. Under State Law Claims

Ala.Code § 6–11–26 states in relevant part:

> Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof ...

Although § 6–11–26 is not itself a bar to punitive damages under 42 U.S.C. § 1983, it does expressly prohibit the award of punitive damages against the state of Alabama, counties and cities.

Accordingly, the court finds that the County's and the City's motions to dismiss, to the extent that they relate to Harrelson's request for punitive damages under his state law claims, are due to be granted.

### B. Violation of the Consent Decree

Next, the County contends that Count V of the Complaint should be dismissed. Under Count V, Harrelson alleges that the County has violated a consent decree ("the Decree") it entered into on November 10, 1992. The County argues that dismissal is appropriate because (1) Harrelson has not alleged any facts which indicate that the County has violated the terms of the Decree; (2) a consent decree does not establish a cause of action under § 1983; and (3) a contempt proceeding and not suit is the proper device to adjudicate an alleged violation of a consent decree. The court agrees with the County's second and third arguments.[6]

In *Green v. McKaskle,* 788 F.2d 1116, 1123 (5th Cir.1986), the Fifth Circuit held that remedial or consent decrees cannot be the basis for § 1983 liability. The *Green* court based its holding on two grounds. First, it recognized that the Supreme Court has never expressed any doubt that § 1983 provides a cause of action only for deprivations of constitutional or statutory rights. *Id.* (citing *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980)). Second, it emphasized that the Court's rationale in determining which federal statutes contain rights actionable under § 1983 suggests that court orders do not establish rights actionable under § 1983. *Id.* With regards to the second ground, the court explained that "[a]ccording to the [Supreme] Court, '[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.' By analogy, since there are 'remedial devices' (contempt) in place to ensure the enforcement of court orders, there is no need to allow court orders to serve as the basis of § 1983 liability." *Id.* (citation omitted).

The court further emphasized the particular importance in distinguishing between right and remedy in "conditions of confinement cases." First, recognizing the significant benefits prisoners receive from detailed consent decrees, it noted that to allow a prisoner to bring both a damage claim under § 1983 and a contempt proceeding, would discourage prison officials from agreeing to such benefits. *Id.* Next, noting the fact that prison officials have limited resources, the court stressed that if prisoners can seek damages for violations of every detail of a remedial decree, compliance would be deterred by the hopelessness of defendants' position. *Id.* at 1124. Finally, it concluded that allowing remedial orders to serve as a basis for § 1983 liability would raise serious problems regarding the ability to give notice to potential defendants preparing themselves

---

6. Because the County has not submitted a copy of the Decree, the court cannot address the merits of its first argument. Moreover, at the motion to dismiss stage the court must accept as true Harrelson's allegation that the County violated the Decree.

conscientiously for the shelter of qualified immunity. *Id.*[7]

 Thus, the *Green* court determined that the appropriate vehicle for enforcement of a consent decree is a contempt action brought before the court responsible for the decree. 788 F.2d at 1123. Subsequently, the First and Eighth Circuits, as well as several district courts, adopted the *Green* court's reasoning. *Martel v. Fridovich,* 14 F.3d 1, 3 n. 4 (1st Cir.1993); *Degidio v. Pung,* 920 F.2d 525, 534 (8th Cir.1990); *Losee v. Nix,* 842 F.Supp. 1178, 1182 n. 3 (S.D.Iowa 1994); *Patrick v. Staples,* 780 F.Supp. 1528, 1549 (N.D.Ind.1991). To date, the Eleventh Circuit has not addressed this issue.[8] The court, however, finds the opinions of the First, Fifth and Eighth Circuits, as well as the various district courts, to be well reasoned and believes that the Eleventh Circuit would adopt them. Therefore, the court holds that an alleged violation of a consent decree cannot be the basis for a § 1983 suit.

Thus, the court finds that the County's motion to dismiss Count V of Harrelson's Complaint is due to be granted.

### CONCLUSION

For the foregoing reasons, the court finds that the County's and the City's motions to dismiss are due to be and are hereby GRANTED. As such, Harrelson's claims for punitive damages against the County and the City are STRICKEN and Count V of the Complaint is DISMISSED.

---

**7.** With respect to this last factor in "conditions of confinement cases," the *Green* court pointed out that

    [w]hile it is reasonable to expect a prison official to know the broad outlines of constitutional law as they apply to the conduct of prison officials, even as set forth in an initial remedial decree, *see Williams* [*v. Bennett,* 689 F.2d 1370, 1386 (11th Cir.1982), *cert. denied,* 464 U.S. 932 [104 S.Ct. 335, 78 L.Ed.2d 305]

(1983) ]; *Jackson* [*v. State of Mississippi,* 644 F.2d 1142, 1146 (5th Cir.1981), at some point it becomes unreasonable to expect a prison official to learn the details of thousands of pages of stipulations and compliance plans. 788 F.2d at 1124.

**8.** In *Clark v. Evans,* 840 F.2d 876, 884 (11th Cir.1988), the Eleventh Circuit merely discussed the Fifth Circuit's holding in *Green.*