**Maureen T. FALK and Joseph J. Russo, Plaintiffs,**

v.

**The COUNTY OF SUFFOLK, the Suffolk County Police Department, George Sloane, John Lechmanski, James Thompson, John Gallagher, Thomas Murphy, and "John Doe" 1–10, being fictitious names for members of the Suffolk County Police Department who participated in or were aware of and failed to prevent the unlawful interception of plaintiffs' telephone communications, Defendants.**

Nos. CV–85–2938, CV–89–3692.

United States District Court,
E.D. New York.

Dec. 24, 1991.

June Resnick German, Huntington, N.Y., for plaintiffs Maureen T. Falk and Joseph J. Russo.

Dennis E. Milton, Office of E. Thomas Boyle, Hauppauge, N.Y., for defendant Suffolk County.

John T. Reynolds, Reynolds, Caronia & Gianelli, Hauppauge, N.Y., for defendant George Sloane.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action under 18 U.S.C. § 2520 and under 42 U.S.C. § 1983 for unlawful interception of wire communications and under 42 U.S.C. § 1983 for an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments to the federal Constitution. The plaintiffs are Maureen Falk and Joseph Russo. The individual defendants are George Sloane, John Lechmanski, James Thompson, John Gallagher, Thomas Murphy, and ten "John Does"; all these defendants were police officers for the County of Suffolk at the time relevant to this action. The "municipal defendants" are the County of Suffolk and the Suffolk County Police Department. The defendants have moved for partial summary judgment, and the plaintiffs have cross-moved for partial summary judgment. For the reasons set forth below, the motions of the defendants are granted in part and denied in part, and the motion of the plaintiffs is denied.

### FACTS

The facts of this case are not undisputed. From late 1983 until early 1984, defendant Sloane conducted an investigation on behalf of the Suffolk County Police Department into reports that plaintiff Russo (then an undercover narcotics officer with the Suffolk County Police Department) was selling cocaine to Mark Falk, the brother of plaintiff Maureen Falk. Defendants Gallagher and Murphy appear to have been Sloane's supervisors. Pursuant to a court order, Sloane arranged a pen register in his own basement to monitor the calls placed from the telephone of Mark Falk (at the time, the plaintiffs lived together, and Mark Falk did not live with them). Defendant Lechmanski helped Sloane set up the pen register, and Lechmanski demonstrated to Sloane how the pen register could be converted into a wiretap. It appears that the Suffolk County Police Department did

not obtain a warrant for the use of such a wiretap to record telephone calls on that line. Rather, the defendants maintain that informants were to place orders for cocaine with Mark Falk and that the police were then to monitor the pen register to determine whether Mark Falk would call Russo's home—presumably, to relay the request for cocaine.

Sometime in December of 1983 or January of 1984, defendant Thompson visited Sloane's house. Rule 3(g) Statement of Defendant Sloane ¶ 6. Sloane maintains that, during his visit, Thompson converted the pen register into a wiretap; however, Sloane contends that he disconnected the wiretap after Thompson left and that no telephone conversations were recorded. Affidavit of James F. Hagney ¶¶ 5, 15. Thompson and the other defendants argue that Thompson did not convert the pen register into a wiretap and that, as such, no telephone calls could have been recorded. Affidavit of Dennis E. Milton ¶ 10. Curiously, however, Sloane has stated that, after disconnecting the wiretap, he destroyed the tape cassettes on which any intercepted calls would have been recorded. Affidavit of June German at 5–6.

The precise date and time of Thompson's visit to Sloane's house is unclear; as such, the plaintiffs have been unable to demonstrate directly that they spoke to Mark Falk on the telephone when the alleged wiretap was operative. However, a telephone log of calls placed from the home of Mark Falk from December 21, 1983 until January 9, 1984—a period of just under three weeks—shows 24 calls to the home of the plaintiffs. Exhibit A to Plaintiffs' Reply Affirmation. Further, plaintiff Russo alleges that defendant Thompson and Ray Perini, an assistant district attorney, told him that "they had heard something . . . on a tape" concerning Russo's alleged selling of cocaine. Affidavit of Joseph Russo ¶ 3.

On February 26, 1984, Suffolk County police officers arrested Mark Falk for the sale of cocaine. The next day, defendant Sloane, another police officer, and Mark Falk went to the home of the plaintiffs. Maureen Falk, who was home at the time, contends that Sloane forcibly entered her house, physically and verbally abused her, searched her house, and coerced her to accompany him to police headquarters. Affidavit of Maureen Falk ¶ 3. Sloane contends that Maureen Falk consented to the entry of her home, that he neither physically nor verbally abused her, and that she went to the police station willingly. Affidavit of James F. Hagney ¶ 20. He argues that, in fact, Maureen Falk attempted to strike him and that an ensuing struggle caused him and the plaintiff to fall onto a sofa bed. He concedes that he prevented Maureen Falk from completing a telephone call to Joseph Russo at that time.

Plaintiff Maureen Falk brought this action in 1985; her first cause of action, under 18 U.S.C. § 2520 and under 42 U.S.C. § 1983, is against all defendants for alleged unlawful wiretapping. Her third cause of action, under 42 U.S.C. § 1983, is against defendant Sloane for alleged unlawful search and seizure. Her second and fourth causes of action seek punitive damages under the first and third causes of action. Plaintiff Joseph Russo brought his suit in 1989. His first cause of action parallels Maureen Falk's first cause of action; his second cause of action seeks punitive damages for the first cause of action. By earlier order, this court consolidated these two suits.

All defendants have now moved for summary judgment on the causes of action that concern alleged wiretapping of the plaintiffs' telephone conversations; they contend that the plaintiff has failed to produce any evidence of any recorded or intercepted conversations. Also, they argue that they are protected by the doctrine of qualified immunity. Defendant Sloane argues that he is also protected by qualified immunity on the matter of his alleged unlawful search and seizure of Maureen Falk. The County of Suffolk and the Suffolk County Police Department further maintain that the plaintiffs are unable to establish *Monell* liability against the municipality. Finally, the plaintiffs oppose the defendants' motions for partial summary judgment, and Maureen Falk cross-moves for sum-

mary judgment on her Section 1983 search and seizure claim against Sloane.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, Rule 56(c) sets forth as clear conditions for summary judgment: (1) the absence of genuine dispute as to any material fact; *and* (2) entitlement to judgment as a matter of law. These requirements are plainly conjunctive. Further, Rule 56(e) provides that the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings...." Rather, the response of the nonmoving party to the motion for summary judgment must set forth, by affidavit or exhibit, "specific facts showing that there is a genuine issue for trial."

The Supreme Court has attempted to define what constitutes a "genuine" issue of material fact: In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Court stated that a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Thus, "if the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511. Still, in the adjudication of a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. Finally, in that summary judgment "deprives a party of its day in court and the right to present its case to the jury, the district court in examining the record must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Gibson v. American Broadcasting Companies, Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989).

However, the existence of a genuine issue of fact does not in itself defeat a motion for summary judgment; rather, the issue must be one of a *material* fact. As the Court stated in *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510: "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." It is necessary, then, to examine the substantive law that governs the plaintiffs' claims in order to determine which facts are material; and it is necessary to probe the submissions of the parties to determine whether, as to any of those material facts, a genuine issue exists such that a trial is necessary.

### 1. *The Wiretapping Claims*

■ Both plaintiffs sue for damages under 18 U.S.C. § 2520. That section provides, in relevant part:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

Section 2511(1)(a) declares it unlawful for any person "intentionally [to] intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."

It is clear from these provisions that no fact could be more material to the right of action under Section 2520 than the fact of an interception, disclosure, or intentional misuse of a wire, oral, or electronic communication. And yet, it is precisely this fact that is disputed by the parties. *See* Rule 3(g) Statement of Defendants ¶ 1 ("No telephone conversations were intercepted or recorded."); Rule 3(g) Statement of Plaintiffs at 1–2 ("Plaintiffs dispute that no telephone conversations were intercepted, disclosed, used or recorded. Plaintiffs submit that, in fact, their telephone conversa-

tions were intercepted, disclosed, used and/or recorded and that recordings of intercepted, disclosed or used conversations existed but were destroyed."). Furthermore, the dispute as to this material fact is "genuine." Although it is true that the plaintiffs have been unable to adduce substantial direct evidence of the wiretapping, the nature of this tort—as a surreptitious activity that is successful only if undiscovered—is such that it may be established through circumstantial evidence. *Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990). Hence: "[The plaintiffs] can raise a question of fact regarding [defendants'] interception of [their] conversations without proving the contents of specific conversations allegedly intercepted." *Id.*

In this case, the plaintiffs have brought forward evidence that could lead a reasonable jury to find in their favor. First, the pen register on the telephone of Mark Falk was part of an investigation aimed at Joseph Russo; thus, if the pen register was in fact converted into a wiretap, it is a more than reasonable inference that the conversations to be intercepted would be those of the plaintiffs. Second, defendant Sloane maintains that defendant Thompson did indeed convert the pen register into a wiretap; further, that Sloane claims to have destroyed the tape cassettes that would have recorded any conversations raises doubts as to his contention that no calls were intercepted or recorded. Fourth, telephone logs regarding the approximate period of the alleged wiretap demonstrate that telephone conversations between the home of Mark Falk and that of the plaintiffs were frequent. Finally, and most importantly, plaintiff Russo has sworn that

defendant Thompson told Russo that Thompson had heard "on a tape" matters that tended to incriminate Russo in the selling of cocaine. Affidavit of Joseph Russo ¶ 3.[1] These items of proof, although they are circumstantial, raise a genuine issue about a fact material to this cause of action—the fact of an unlawful wiretap by the defendants.

■ However, it should be noted in this regard that the plaintiffs' theory of liability as to defendants Lechmanski, Gallagher, and Murphy is nebulous at best. Plaintiffs have suggested that Gallagher and Murphy were notified by Sloane that the pen register could be converted into a wiretap; the plaintiffs appear to reason that Gallagher and Murphy, as superiors to Sloane, should have inquired "as to how Sloane acquired this knowledge and as to whether any attempts were made to convert the pen register to a wiretap...." Rule 3(g) Statement of Plaintiffs at 2. As to Lechmanski, the plaintiffs merely allege that he set up the authorized pen register and showed Sloane how to convert it into a wiretap. But these alleged acts—even if proven—do not establish a colorable claim of a violation of Section 2511. That is, the plaintiffs have not alleged that Lechmanski, Gallagher, and Murphy unlawfully intercepted, disclosed, or misused their telephone conversations. As to these three defendants, then, the court hereby grants summary judgment and dismisses the complaints. As to the other defendants in the wiretapping claims, however, the court denies summary judgment.

### 2. *The Search and Seizure Claim*

■ Maureen Falk has moved for summary judgment on her Section 1983 claim

---

1. The entirety of that part of Russo's Affidavit states: "After I learned about the investigation of me by the Bureau of Internal Affairs of the Suffolk County Police Department, I personally questioned both defendant Thompson and Ray Perini, assistant district attorney involved in this matter. I asked them why they were so convinced of my involvement with illegal cocaine sale. They told me they had heard something that confirmed their suspicion on a tape. Since, upon information and belief, none of the lawfully created tapes contained anything that could be construed to implicate me in cocaine sales, I have concluded that they must have

heard something on a tape created in violation of law or through the disclosure of the contents of a tape created in violation of law."

It is by no means clear from the submissions of the parties what were these "lawfully created tapes" to which Russo adverts. No other reference to such tapes is found in the motion papers. Because, however, the defendants have had an opportunity on reply to clarify this matter for the court and because they have not even endeavored to do so, the court is unwilling to reach any conclusions on this matter or, as a consequence, to discount the affidavit of Russo.

that defendant Sloane violated her rights under the Fourth and the Fourteenth Amendments when he allegedly entered her home without her authorization, physically and verbally abused her, searched her apartment, and coerced her to accompany him to police headquarters. Affidavit of Maureen Falk ¶ 3. Defendant Sloane admits none of the allegations of Maureen Falk; he does concede, however, that, when plaintiff Falk tried to call Russo on the telephone, he "attempted to press down the lever on the telephone to enable him to explain to Maureen Falk that ... Russo was the target of the investigation." Reply Affidavit of James F. Hagney ¶ 36.

Curiously, Maureen Falk concedes that almost all the factual questions regarding Sloane's visit to her home are genuinely disputed issues of material fact. Affidavit of Maureen Falk ¶ 4(h)–(p); Plaintiffs' Memorandum of Law at 13–14. However, she moves for summary judgment on her Section 1983 search and seizure claim on the theory that Sloane has admitted to interfering with her telephone call to Russo and that this "disruption" denied her liberty under the federal Constitution. Plaintiffs' Memorandum of Law at 16. Although her claim of right represents a rather aggressive reading of the Fourth and the Fourteenth Amendments, the court declines to entertain her motion for summary judgment: She has carved out a tiny fragment of her Section 1983 claim and has moved for judgment on the basis of a small fact—a fact that appears innocuous when viewed in isolation. There are simply too many unresolved segments of her search and seizure claim (illegal entry, illegal search, illegal use of force, illegal detention) to justify a ruling predicated only on Sloane's interruption of her telephone conversation. Her motion for summary judgment is therefore denied.

### 3. *Qualified Immunity*

■ All defendants have moved for summary judgment on all claims on the ground that they are protected by the doctrine of qualified immunity. The Supreme Court set out the clear parameters of the doctrine of qualified immunity in *Harlow v. Fitzger-*

*ald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982):

> We ... hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

The phrase "clearly established statutory or constitutional rights" is dispositive here. All defendants are alleged to have violated 18 U.S.C. § 2511; Sloane is also alleged to have violated the Fourth and Fourteenth Amendments. The federal rights to be free from unauthorized wiretapping and to be free from unreasonable searches and seizures could not be more clearly set forth in the United States Code and in the federal Constitution.

The defendants have not argued that they are entitled to qualified immunity on the version of the facts alleged by the plaintiffs. Rather, the defendants have urged—on the assumption that the pen register was never converted into a wiretap and on the assumption that Maureen Falk consented to Sloane's entry of her house— that they are protected by qualified immunity.· However, as demonstrated above, there are genuine issues of material fact regarding the plaintiffs' claims; that is, the questions of whether the defendants intercepted the plaintiffs' telephone conversations and of whether Sloane did unlawfully enter Maureen Falk's home, seize her, and search her house remain questions that must be resolved at trial. Because the court cannot at this point determine the plaintiffs' account of the facts to be untrue, neither can this court conclude that the defendants are protected by qualified immunity. Therefore, the defendants' motions for summary judgment, made on that theory, are denied.

### 4. *The "Policy or Custom" Claim*

■ Finally, the municipal defendants have moved for summary judgment on the ground that the plaintiffs have failed to adduce evidence of a "policy or custom" by the municipal defendants that caused the

plaintiffs' deprivation of rights. *See Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) (claim under *Monell* requires showing of "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right"). However, the plaintiffs have referred the court to a report by a New York State Commission of Investigation that concerns allegations of habitual unlawful wiretapping by the Suffolk County Police Department. Plaintiffs' Exhibit H. Among the findings of that report was a conclusion that:

> Detectives and police officers of the Suffolk County Police Department have engaged in illegal wiretapping with the approval of their supervising sergeant and the Bureau Chief of the Narcotics Bureau of the District Attorney's Office.

*Id.* The report further details an extensive practice of illegal wiretapping in narcotics investigations by the defendant Suffolk County Police Department—with the apparent approval of those charged with the formation of police policies. *Id.* Reports such as this have been held to be admissible in a Section 1983 action and to be probative of a *Monell* claim. *Gentile v. County of Suffolk,* 926 F.2d 142, 151 (2d Cir.1991) (similar—if not same—report admitted against municipal defendant to show "policy or custom" of police misconduct). Because the plaintiffs' have brought forth evidence for their *Monell* claim, then, this part of the defendants' motion for summary judgment should be denied.

■ However, the court, on its own motion, dismisses the claims for punitive damages under Section 1983 against the municipal defendants. Such relief is unavailable. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

## CONCLUSION

The motions of the defendants Lechmanski, Gallagher, and Murphy for summary judgment are granted; also, the claims for punitive damages against the municipal defendants are dismissed. As to all other claims, the motions for summary judgment both by the defendants and by the plaintiffs are denied because there remain on those matters genuine issues of material fact that must be resolved at trial.

SO ORDERED.