# In re LYNNWEAR CORPORATION, Debtor.

## Bankruptcy No. 81 B 10416 (JL/PBA).

United States Bankruptcy Court, S.D. New York.

March 22, 1983.

Sherman & Citron, P.C., New York City, for debtor; Mitchell Greene, New York City, of counsel.

Jerry Mason, pro se.

DECISION AND ORDER REDUCING
AND ALLOWING CLAIM NO. 328,
JERRY MASON

PRUDENCE B. ABRAM, Bankruptcy
Judge:

This matter came on before the court on February 22, 1983 on the objection of Lynnwear to the claim of Jerry Mason in the amount of $6,027.42 for commissions. Mr. Mason appeared in opposition to the objection and represented himself.

The facts are as follows: In December 1980 the Joanna division of Lynnwear entered into negotiations with Mason, an independent salesman, which culminated in an agreement that as of January 1, 1981, Mason would be Joanna's sole sales representative in the states of Illinois, Indiana and Wisconsin, minus the area west of # 53. The commission rate was 7% on all regular price shipments and 2% on all off price shipments. It was agreed that Mason would be given credit for all sales made in the territory or to customers, whether taken by Mason, received by the Company through the mails, taken by the Company's place of business or otherwise. Mason was to be billed for samples at 40% off cost. It was further agreed that Mason would "be charged ½ of cost to 'Joanna' for advertising and markdowns as agreed upon." The phrase "as agreed upon" was handwritten on the contract by the parties, apparently by the signatory for Joanna, and duly initialled and replaced the phrase "providing mutual permission for same has been given."

█ Mason has asserted that the contract terms require his approval of advertising allowances before they can be charged against his commissions. The court does not agree with this interpretation. Although the court was afforded little guidance by either party on the proper interpretation of the contract, the court has carefully reviewed all documents and has determined that the altered language was intended to refer to an undated letter from Robert Simon of Joanna to Mason that predated the contract. The phrase "as agreed" was a shorthand reference to the prior agreement of the parties; it did not mean, as Mason apparently contends, such advertising as the parties "agree upon" in the future.

The prior letter provided as follows:

"You [Mason] will be charged ½ of the cost to 'Joanna' of any advertising, markdowns, or promotional expenses in your territory. We [Joanna] reserve the right to approve all of the above mentioned expenditures."

This court interprets this language to allow Joanna to charge Mason with ½ of the cost of advertising and did not require his consent or "agreement." This seems logical in light of the fact that Mason was entitled to commissions whether or not he was the procuring cause of the sale.

█ The major dispute between Mason and the debtor involves precisely this issue: when Mason was not the procuring cause of a sale, but nevertheless entitled to commissions because of the contract terms, must he be consulted and agree to the terms of an advertising allowance? This court thinks not. It simply strains the bounds of reasonableness too far to expect the debtor to consult Mason in such circumstances.

Mason has claimed commissions of $6,027.42 are due to him and provided a schedule showing the breakdown of the commissions claimed (Applicant's Ex. K). The debtor has not provided a detailed response to each of the sales for which commissions are claimed by Mason. However, this court has reviewed such information as has been presented, which consists principally of invoices or copies of invoices supplied by Mason, and finds the following:

1) The Wieboldt's sale of December 30, 1980 in the amount of $6,714 should be excluded from the commission base since Mason was not the procuring cause and the order was received prior to the commencement date of his contract.

2) There is no documentation for the claimed Wieboldt's sale dated January

22, 1981 in the amount of $9,324 other than a torn envelope addressed to Mason. The debtor asserts the Wieboldt's Spring order, which this apparently is, was written December 2, 1980.

3) The Marshall Field order in the amount of $10,635 is based on an order of February 23, 1981, according to the invoices submitted by Mason. This date was after Mason's employment was terminated. This date for the order is confirmed by the debtor's denial that an order was received from this customer during the relevant period (Debtor's Ex. 1).

The court computes the commissions due to Mason as follows:

| | |
|---|---:|
| Mason's Alleged Commission Base | $108,159 |
| Deduct Wieboldt's | − 6,714 |
| | 101,445 |
| Deduct Wieboldt's | − 9,324 |
| | 92,121 |
| Deduct Marshall Field | − 10,635 |
| Total Orders | $ 81,486 |
| Less 8% estimated returns | − 7,265 |
| Commission Base | 74,221 |
| 7% Commission on Commission Base | 5,195 |
| Less samples retained | − 938 |
| Less ½ Carson Pirie Scott advertising allowance | − 2,350 |
| Total Commissions Due Mason | $ 1,907 |

■ A final word needs to be said about this claim. Mason asserted at the hearing that the claim is entitled to priority under Section 507(a)(3) of the Bankruptcy Code. An examination of the claim, which was prepared by an attorney, does not indicate any claim to priority. Priority status must be claimed. Chapter XI Rule 11–33(b)(2) of the Rules of Bankruptcy Procedure permits an amendment to a claim to be filed any time before confirmation. See *In re David Witherspoon, Inc.,* 13 Collier Bk. Cases 676 (1977) (Post-confirmation amendment would disrupt plan and is denied). As Interim Rule 3001, adopted as a local rule, does not refer to amendments, rule 11–33 may still govern. In any event, the time fixed by Interim Rule 3001 for the filing of claims is fixed by court order, and thus subject to modification by the court. Under the circumstances of this case, given the communications with respect to Mason's claim to the debtor many months ago (see Applicant's Exhibits I and J), this court is of the opinion that the debtor was placed on notice that the claim was a priority claim by virtue of the demand for immediate payment. Therefore, in light of the small amount involved, the court will allow the oral amendment to the claim to claim priority made at the hearing on the objection, which hearing occurred prior to confirmation.

■ However, priority is available only for actual services performed. See 3A *Collier on Bankruptcy* (14th Ed.) ¶ 64.202. Thus, Mason is entitled to priority only with respect to commissions earned on sales for which he was the procuring cause. A detailed review of the invoices by the court has led it to the view that Mason was the procuring cause of only the following sales:

| Order Date | Customer Name | Amount of Sale |
|---|---|---:|
| 1/12/81 | Greta Swan | $ 408 |
| 1/28/81 | Greta Swan | 645 |
| 1/13/81 | Elizabeth House of Charm | 378 |
| 1/19/81 | Elizabeth House of Charm | 1,239 |
| 1/18/81 | Ruth Miller | 1,107 |
| 1/18/81 | Lewin's | 290 |
| 1/18/81 | Lewin's | 700 |
| 2/5/81 | Corner Casuals | 711 |
| 2/6/81 | Sport Shop | 522 |
| 2/6/81 | Carnaby on Main | 485 |
| | | $6,485 |

Commissions on $6,485 at 7% are $454.

Mason's claim is hereby allowed to the extent of $454 as a priority claim and allowed as a general unsecured claim in the amount of $1,453 (total commissions of $1,907 less priority claim of $454).

SO ORDERED.