In re CARDINAL INDUSTRIES, INC. and the following substantively consolidated subsidiaries: Cardinal Industries of Florida, Inc., Cardinal Industries of Georgia, Inc., Cardinal Industries Services Corporation, Cardinal Industries Mortgage Company, Cardinal Parts Service Company, Cardinal Lodging Group, Inc., Cardinal Apartment Management Group, Inc., Cardinal Industries Development Corporation, Cardinal Industries of Florida Services Corporation, Cardinal Industries of Georgia Services Corporation, Cardinal Furniture Leasing Company, Cardinal Retirement Management Group, Inc., Cardinal Acceptance Corporation, Maxim Building Corporation, Cardinal Advisory Group, Inc., Columbus Construction, Inc., Cardinal Securities Corporation, Cardinal Manufacturing, Inc., Camden Development Corporation, Cardinal Compensation, Inc., Cardinal Regulatory of Kentucky, Inc., Cardinal Regulatory of Michigan, Inc., Cardinal Regulatory of West Virginia, Inc., Cardinal Land Corporation, Cardinal Community Corporation, Cardinal Industries Insurance Agencies, Inc., CII of Pennsylvania, Inc., Cardinal Industries of Texas, Inc., Cardinal Industries Development Corporation of Texas, Inc., Cardinal Realty Company, Cardinal Industries Realty Corporation, Debtors.

Bankruptcy No. 2–89 02779.

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 16, 1993.

See also 151 B.R. 843.

James H. Bownas, Gen. Counsel, Cardinal Realty Services, Inc., Reynoldsburg, OH, Leon Friedberg, Benesch, Friedlander, Co-

plan & Aronoff, Columbus, OH, to Cardinal Realty Services, Inc.

United States Trustee, Columbus, OH.

## OPINION AND ORDER ON OBJECTIONS TO CLAIMS OF JOHN T. LONG AND JAMES T. HARMAN

BARBARA J. SELLERS, Bankruptcy Judge.

Cardinal Realty Services Incorporated ("CRSI"), successor in interest to Cardinal Industries Incorporated ("CII"), filed a motion to reclassify the claims asserted by John T. Long ("Long") and James T. Harman ("Harman"), former employees of CII or one of its corporate subsidiaries. Long and Harman responded separately to the motion. Subsequent to a June 10, 1993 hearing, each party submitted additional authority to support his respective position.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) which this bankruptcy judge may hear and determine.

## I. THE NATURE OF EACH CLAIM

The claims of Long and Harman are factually distinguishable. However, the legal nature of each claim is similar. Whether each claim is entitled to priority requires an analysis of the term "earned" as set forth in 11 U.S.C. § 507(a)(3).

### A. The Claim of John Long

Between June, 1984 and March, 1989, Long worked as a commissioned sales person for Cardinal Industries Securities Company, a subsidiary of CII. His job duties included the syndication of limited partnerships in which CII or one of its corporate subsidiaries was the general partner. Long was paid a base salary plus a commission for each sale. Those commissions were payable at one-half when the sale was made and the remaining one-half as the new limited partners made payments on their subscription notes. CRSI does not dispute that this was the payment arrangement under which Long worked.

Long filed two proofs of claim seeking priority under 11 U.S.C. § 507(a)(3) for commissions he alleges CII owed him when his employment terminated in March, 1989. CRSI does not dispute the amount of the commissions owed, but only the priority status Long seeks.

### B. The Claim of James Harman

Harman's claim arises from a bonus that he contends CII owed him for 1988. He further contends that this claim is entitled to priority under 11 U.S.C. § 507(a)(3) because it was "earned" only when it was formally authorized for payment, a date within the ninety days preceding CII's bankruptcy filing.

Initially, CRSI disputes Harman's entitlement to any bonus. CRSI further argues that even if Harman has a claim for a bonus, that claim should not receive priority treatment.

## II. DISCUSSION AND CONCLUSIONS OF LAW

Section 507(a)(3) provides a third priority status for "allowed unsecured claims for wages, salaries or commissions * * * earned by an individual within 90 days before the date of the filing of the [bankruptcy] petition." Such priority is limited to $2,000 per individual. 11 U.S.C. § 507(a)(3)(B). Although the nature of each claim is different, the priority status of each depends on an interpretation of the word "earned".

Statutory construction begins with the language of the statute itself. *Bread Political Action Committee v. Federal Election Commission*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982). See also, *Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir. 1988). Further, the plain language of the statute should control absent a clear, contrary intent. *Bread*, 455 U.S. at 581, 102 S.Ct. at 1238. As stated by the United States Supreme Court, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

■ There is little case law which interprets the term "earned" within the context of 11 U.S.C. § 507(a)(3). One court has held that "the focal point of 11 U.S.C. § 507(a)(3) is not when the right to [wages] 'matures' but, rather, when it is 'earned'." *Jeannette Corporation v. Gilardi (In re Jeannette Corporation)*, 118 B.R. 327, 329 (Bankr.W.D.Pa. 1990). This analysis recognizes that an otherwise earned commission or bonus may not be mature for payment when "earned" because it may depend on a future contingency for payment. Said differently, the timing of the payment on account of an earned bonus or commission should not be the focus of the analysis under 11 U.S.C. § 507(a)(3)(A). Rather, the focus should be upon the time the individual performed the services which gave rise to the right to the bonus or commission. "Earned" for purposes of priority, therefore, may not always be synonymous with "payable".

### A. The Claim of John Long

■ Long's claim is based upon commissions that he contends were at least partly "earned" within the 90 days before CII filed its Chapter 11 petition on May 15, 1989. Under Long's theory, half of the commissions due him on account of sales made during his tenure with CII were not "earned" until the investors made payments under the subscription notes. Because some of these payments occurred during the critical 90 day period or even post-petition, Long contends his unsecured claim is entitled to priority under 11 U.S.C. § 507(a)(3).

To construe "earned" in the manner suggested by Long, however, would not comport with its ordinary or common meaning. This Court believes that Long's commissions were "earned", even if not "payable" because payment was contingent on a future event, when the services giving rise to the sale of a limited partnership unit occurred. A distinction must be made between the earning of the commission and the corresponding right to payment of that earned commission. The former is the appropriate focus for any analysis under 11 U.S.C. § 507(a)(3)(A).

The sales which gave rise to the commissions claimed by Long occurred in 1988.

Therefore, any commissions claimed by Long were "earned" in 1988, a date clearly prior to the 90 day period preceding CII's bankruptcy petition. Accordingly, Long's unsecured claim for commissions is not entitled to priority under 11 U.S.C. § 507(a)(3).

### B. The Claim of James Harman

Harman contends that he was entitled to payment of a bonus arising from his services for CII in 1988. He claims priority status for this bonus because it allegedly was not approved for payment until a date within the 90 days before CII's bankruptcy petition.

CRSI initially disputes Harman's conclusion regarding his entitlement to any bonus for 1988. Alternatively, CRSI contends that even if Harman has a claim for a 1988 bonus never received, that claim is not entitled to priority under 11 U.S.C. § 507(a)(3).

Based upon the evidence presented at the June 10, 1993 hearing, the Court finds that Harman established his entitlement to a bonus for services performed in 1988. He testified from personal knowledge that Austin Guirlinger, then president of CII, approved a bonus for him. CRSI did not rebut this evidence except for a statement from one individual that no one with CII received a bonus for 1988. Since receipt and entitlement to a bonus are not the same, lack of payment does not correspond to lack of entitlement.

■ Entitlement to a bonus alone, however, does not establish a priority claim. The analysis here is similar to that undertaken with Long's claim. Indisputably the services which gave rise to Harman's bonus were performed in 1988. The fact that the bonus might not have been approved for payment until later does not alter the time when it was "earned" for purposes of 11 U.S.C. § 507(a)(3). The bonus was earned at the end of 1988 for services performed in 1988. The term "earned" has a fixed meaning which does not change based upon a particular company's policy regarding the time for payment of such bonuses.

■ The Court finds that Harman's bonus was earned at the end of 1988 based upon

services he performed during 1988 which gave rise to a right to a bonus. Accordingly, that bonus was not "earned" within the 90 days preceding CII's bankruptcy petition, and is not entitled to priority status under 11 U.S.C. § 507(a)(3).

### III. CONCLUSION

For the reasons stated above, the Court finds that Long's unsecured claim for commissions and Harman's bonus claim, although proven, are not entitled to priority under 11 U.S.C. § 507(a)(3). Accordingly, the motion to be filed by CRSI to reclassify these claims to general unsecured claims is hereby **GRANTED** and the claims are allowed only as general unsecured claims.

IT IS SO ORDERED.