**In re Scott Douglas MYER and Karen Gail Myer, Debtors.**

**Bankruptcy No. 96–60022.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

June 4, 1996.

James R. Doran, Attorney at Law, Springfield, Missouri, for debtors.

J. Michael Riehn, Attorney at Law, Cassville, MO, for claimant.

*MEMORANDUM OPINION AND ORDER SUSTAINING DEBTORS' OBJECTION TO CLAIM OF CREDITOR SAMMY BURKS*

KAREN M. SEE, Bankruptcy Judge.

On January 4, 1996, Debtors Scott and Karen Myer filed a Chapter 13 bankruptcy

case. On February 26, 1996, Creditor Sammy Burks filed a proof of claim, asserting priority status for a claim in the amount of $4,889.61. On April 17, 1996 Debtors filed an Objection to Claim of Sammy Burks; thereafter, on April 22, 1996, Mr. Burks filed his Objection to Debtors' request that Burks' claim be disallowed. The court sustains Debtors' objection to the claim after a hearing on May 21, 1996; review of the file, arguments and briefs; and analysis of other authority. The court has jurisdiction over this core proceeding and may enter final orders pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (B), and (O).

## BACKGROUND FACTS

Debtors, d/b/a Salty Sucker Bait Company, filed their Chapter 13 petition on January 4, 1996. In Schedule F, listing creditors holding unsecured, non-priority claims, Debtors identify a lawsuit and judgment obtained by Sammy Burks in Taney County, Missouri for sales representative fees owed by the bait company in the amount of $4,800. In this schedule, Debtors list Mr. Burks' claim as disputed. In Schedule E, Debtors state they have no creditors holding unsecured, priority claims.

On February 26, 1996, Mr. Burks filed a proof of claim in the amount of $4,889.61, plus interest. Mr. Burks characterizes the claim as an unsecured, priority claim under § 507(a)(3). Additionally, Mr. Burks states the debt was incurred on November 30, 1995 and "filed" on December 14, 1995.

On April 17, 1996, Debtors filed their Objection to Claim of Sammy Burks, stating:

> Debtors believe no sums of monies are owed to Sammy Burks. Debtors also state the claim should not be allowed as a priority claim, and also should not be allowed as an unsecured or secured claim. Debtors dispute owing any monies to Mr. Burks and request that this claim be disallowed in total.

On April 22, 1996, Mr. Burks filed a response titled Objection of Creditor Sammy Burks to Debtors' Request That His Claim Be Disallowed.

In his response, Mr. Burks stated that on August 29, 1995, he filed an action in Taney County Circuit Court alleging that Debtors, d/b/a Salty Sucker Bait Company, owed Mr. Burks commissions pursuant to an Exclusive Sales Representative Agreement. Mr. Burks further stated that, after trial on the matter, he obtained a judgment for "lost sales commissions" in the amount of $4,889.61, plus post-judgment interest at the Missouri statutory rate of nine percent. Mr. Burks argues that Debtors, who did not appeal the state court judgment, should not be allowed to contest the validity of the judgment in bankruptcy court. Moreover, Mr. Burks asserts that "the amount of lost commissions should be a priority claim as it represents services performed on behalf of the debtors." Nowhere in his response does Mr. Burks identify specific commissions or dates upon which he performed services generating commissions earned but unpaid by the Debtors.

## DISCUSSION

Bankruptcy Code § 507(a)(3)(A), (B) (1994) provides, in pertinent part:

(a) The following expenses and claims have priority in the following order:

\* \* \* \* \* \*

(3) Third, allowed unsecured claims, but only to the extent of $4,000 for each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—

> (A) wages, salaries, or **commissions,** including vacation, severance, and sick leave pay **earned** by an individual; or
> (B) sales **commissions earned** by an individual ..., acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business, if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual ... earned by acting as an independent contractor in the sale of goods or services was earned from the debtor ... [emphasis added].

Subsection (a)(3)(B) was added in 1994 to clarify that commissions of independent sales representatives are entitled to the same priority as employee wages. 3 Collier on Bankruptcy, § 507.04[3][c] at 507–25 (15th ed. 1996). Under the specific language of the statute, the independent sales representative must have earned at least 75 percent of his or her earnings from the debtor during the one year preceding filing or cessation of business in order to qualify for priority status on commissions earned 90 days before bankruptcy or conclusion of operations. Thus, a sales representative can be entitled to priority status on commissions earned within the traditional 90 day time frame, but only if the bulk of the sales income generated during the year preceding bankruptcy actually derives from the debtor.

Priority status is available only for actual services performed and commissions earned. *In re Lynnwear Corporation*, 28 B.R. 532, 534 (Bankr.S.D.N.Y.1983); Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy*, § 10.11[H] at 10–80 (4th ed. 1994). Thus, a claimant is entitled to priority only with respect to commissions earned on sales for which he or she was the "procuring cause." *Lynnwear*, 28 B.R. at 534. Additionally, courts have held that "earned," for purposes of § 507(a)(3), is not always synonymous with "payable." *In re Cardinal Industries*, 160 B.R. 83, 85 (Bankr. S.D.Ohio 1993); *In re Jeannette Corporation*, 118 B.R. 327, 329 (Bankr.W.D.Pa.1990). Rather, analysis of when the right to a § 507(a)(3) priority arises focuses on the time the individual **performed** the services giving rise to the right to the commissions. *Cardinal Industries*, 160 B.R. at 85.

In the instant case, Mr. Burks is not the "procuring cause" of and he did not actually "perform" services giving rise to the commissions for which he seeks priority status. Instead, Mr. Burks' claim arises out of the state court judgment on his breach of contract action. Moreover, the judgment represents lost opportunities, not actual commissions earned from work actually performed by Mr. Burks. Mr. Burks makes no allegations that he performed services for the Debtors that give rise to earnings, but instead repeatedly refers to his claim as "lost commissions." Thus, it appears that Mr. Burks claims priority not for commissions earned and unpaid, but rather for commissions he never had a chance to earn due to Debtors' alleged breach of the sales representative agreement. Such "lost commissions" awarded pursuant to a state court judgment are not "earned" commissions entitled to priority under the Bankruptcy Code.

Even if one assumed that the judgment was based on "earned commissions," as referenced in § 507(a)(3)(A), (B), the objection to Mr. Burks' claim would still be sustained because the policy underlying § 507(a)(3) does not warrant granting priority status to the claim. Priorities for wages and commissions were "intended for the benefit of those who are dependent upon their wages, and who, having lost their employment by the bankruptcy, would be in need of such protection." 3 Collier on Bankruptcy, § 507.04[3][b] at 507–24 (15th ed. 1996) *quoting Blessing v. Blanchard*, 223 F. 35 (9th Cir.1915). Claimants of wages and earned commissions under § 507(a)(3) obtain a priority limited to $4,000 earned in the 90 days before bankruptcy. Such priority claimants have no judgment lien rights on real or personal property, no available judicial collection remedies, such as garnishment or other execution, and no post-claim asset discovery options, such as debtors' examinations available post-judgment to successful plaintiffs.

By choosing to reduce his lost commission claim to a judgment, Mr. Burks changed the nature of his claim in bankruptcy. He has already sought and obtained enhanced protection for the amounts due to him under the Exclusive Sales Representative Agreement by obtaining a state court judgment for breach of that agreement. This judgment was intended to put Mr. Burks in a better position, *i.e.* a priority position, ahead of other unpaid employees or commission agents. He had a host of state court remedies, referenced above, to enhance and collect his former claim after it was reduced to judgment. Those additional protections, which could remain effective despite the bankruptcy filing, are not available to mere § 507 claimants in the bankruptcy case. For

example, Mr. Burks had the benefit of collateral estoppel to establish the conclusive amount of his claim based on the final, unappealed state court judgment. In addition, if a judgment lien had been properly perfected on debtors' property outside the 90 day preference period, that judgment lien would remain effective in the bankruptcy case, thus creating a higher priority secured or partly secured claim for Mr. Burks.

Thus, neither Mr. Burks nor his judgment is the type of claimant or claim the Bankruptcy Code seeks to protect under § 507(a)(3)(A), (B). The claim is based on a judgment, not on earned commissions. By electing to obtain a judgment, with its attendant interest, judgment lien, and judicial collection and enforcement remedies, Mr. Burks surrendered any potential for a wage or earned commission priority. He is not entitled to the double benefit of a judgment claim and an unsecured, priority commission claim.

Accordingly, it is ordered that Debtors' Objection to Claim of Sammy Burks is SUSTAINED. The priority status of the claim is denied and the claim is allowed as a general, unsecured, nonpriority claim.