Joseph G. Rosania, Jr., United States Bankruptcy Judge
A priority for wages was included as part of the Bankruptcy Act of 1898 upon its enactment and has been a feature of bankruptcy law since that time. The *898 purposes of allowing a priority claim for wages are to alleviate hardship on employees involved in a bankruptcy case and to encourage employees to stay with an employer in financial difficulty. The amount of the priority claim and the time-period to measure such claim have evolved and increased over time. Both the amount of the priority claim and the time-period are legislative decisions. Previously, the amount of the priority wage claim was $ 2,000 for wages earned within 90 days of the bankruptcy filing under the Bankruptcy Reform Act of 1978. Presently, an employee may be paid up to $ 12,750 for wages earned within 180 days of the bankruptcy filing. This case involves the interpretation of the priority wage statute.
ISSUES
This matter is before the Court on cross-motions for summary judgment filed by High Plains Computing, Inc. dba HPC Solutions ("Debtor") and employee-creditor, Dustin Greenberg ("Greenberg"). The issue presented is whether a commission owed to Greenberg by the Debtor was earned within the 180 days prior to the Debtor's bankruptcy filing, such that a portion of the commission is entitled to priority status under 11 U.S.C. § 507(a)(4). The Court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B) and 28 U.S.C. § 1334.
BACKGROUND
The following facts are undisputed. The Debtor is a Colorado corporation that offers a broad-based portfolio of services and solutions in information technology, unified communications, and professional services for governmental and healthcare industries. The Debtor works with manufacturers of software, cloud computing, collaboration, storage, and integration, and it provides developmental services, data management services, network engineering, and related services and support.
From March 2013 to February 2017, Greenberg was employed by the Debtor in contract management and sales, earning salary and commissions. According to the Debtor's employee handbook, commissions are based on each employee's employment agreement. On May 18, 2016, Greenberg entered into a compensation agreement with the Debtor. The compensation agreement states that it takes precedence over the employment agreement where context requires but that the terms of the employment agreement otherwise apply.
Under the terms of the compensation agreement, Greenberg earned commissions as a percentage of gross sales on contracts that he assisted in procuring. The Debtor's employee handbook provides that commissions are "paid once the [Debtor] is paid in full" on a contract, and "on the last payday of the month following the end of the quarter." The Debtor's compensation and incentive plan confirms that commissions are "paid on the Quarter of receipt of payment" on a contract.
On November 10, 2016, the Debtor entered into a contract with the United States Department of Agriculture ("USDA") to provide hardware and services. Because Greenberg assisted in procuring the USDA contract, he was entitled to receive a commission on the contract once the USDA paid the Debtor in full. The USDA made payment in full on the contract on either November 26, 2016, or November 29, 2016.[1] Per the Debtor's employee *899 handbook, Greenberg should have received his commission for the USDA contract on the last payday in January 2017, which was January 27, 2017. The Debtor did not pay Greenberg his commission on said date.
Greenberg voluntarily resigned his position with the Debtor on February 16, 2017. At the time of his resignation, the Debtor still had not paid Greenberg his commission for the USDA contract.
I. The State Court Case
On April 11, 2017, Greenberg filed a complaint against the Debtor for breach of contract (i.e., the compensation agreement) in the District Court for the City and County of Denver, Case No. 2017-CV-31317 (the "State Court Case"). Through the State Court Case, Greenberg sought to recover $ 31,312.97 in unpaid wages, representing his commission for the USDA contract.
On May 10, 2017, the Debtor and Greenberg entered into an agreement to settle the State Court Case. Under the settlement agreement, the Debtor agreed to pay Greenberg $ 26,528.92. Specifically, the Debtor was to pay Greenberg $ 1,500 within seven days after execution of the settlement agreement, and $ 5,000 per month, commencing June 15, 2017, until the settlement amount was paid in full.
Thereafter, the Debtor paid Greenberg $ 1,500 pursuant to the settlement agreement, reducing the total amount owed to $ 25,028.92. The Debtor made no further payments to Greenberg under the settlement agreement.
II. The Bankruptcy Case
The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 23, 2017. The Debtor filed its original Schedule E/F on June 9, 2017, and amendments thereto on June 13, 2017; June 30, 2017; September 5, 2017; and September 15, 2017. On the original Schedule E/F and subsequent amendments, the Debtor listed a claim owed to Greenberg in the amount of $ 25,028.92, of which $ 12,850 was entitled to priority status under 11 U.S.C. § 507(a)(4). Greenberg's claim was not marked as disputed on any of the filings.
On June 21, 2017, Greenberg filed Proof of Claim No. 8-1, asserting a claim in the total amount of $ 26,528.92, of which $ 12,850 was entitled to priority status under 11 U.S.C. § 507(a)(4).
On February 23, 2018, the Debtor filed its Second Amended Plan of Reorganization (the "Plan"). Article V § 5.1 of the Plan provided that all allowed pre-petition wages and employee claims under 11 U.S.C. § 507(a)(4) would be paid in full upon confirmation. The Court entered an Order confirming the Plan on March 28, 2018.
The Debtor did not pay any portion of Greenberg's claim upon confirmation of the Plan. Instead, on April 20, 2018, the Debtor objected to Greenberg's claim. Greenberg filed a response, and the parties subsequently filed cross-motions for summary judgment and respective responses thereto.
The parties agree that the total amount of Greenberg's claim should be reduced from $ 26,528.92 to $ 25,028.92, because he previously received a payment of $ 1,500 under the settlement agreement. However, the Debtor disputes that any portion of Greenberg's claim is entitled to *900 priority status. Specifically, the Debtor argues that Greenberg earned his commission on the USDA contract when the Debtor and the USDA entered into the contract on November 10, 2016. Thus, the Debtor asserts that because Greenberg's commission was earned 194 days pre-petition, no portion of his claim is entitled to priority status under 11 U.S.C. § 507(a)(4).
Greenberg argues that his commission on the USDA contract was earned, not when the Debtor and the USDA entered into the contract, but when the USDA paid the Debtor in full on the contract on November 26, 2016. As a result, Greenberg contends that he earned the commission 178 days pre-petition, such that $ 12,850 of his claim is entitled to priority status under 11 U.S.C. § 507(a)(4).
ANALYSIS
I. Standard of Review and Burden of Proof
Rule 56 of the Federal Rules of Civil Procedure applies in contested matters. See Fed. R. Bankr. P. 9014(c) ; Fed. R. Bankr. P. 7056. Rule 56(a) provides that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing a motion for summary judgment, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Koch v. Koch Indus., Inc. , 203 F.3d 1202, 1212 (10th Cir. 2000) (citation omitted).
"Presentation of cross-motions for summary judgment does not concede the absence of a material issue of fact." Eagle v. Louisiana & S. Life Ins. Co. , 464 F.2d 607, 608 (10th Cir. 1972) (citing Nafco Oil & Gas, Inc. v. Appleman , 380 F.2d 323, 324-25 (10th Cir. 1967) ). Rather, cross-motions for summary judgment must be determined independently. See e.g. , Buell Cabinet Co. v. Sudduth , 608 F.2d 431, 433 (10th Cir. 1979) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because "determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact...." In re Ribozyme Pharm., Inc. Sec. Litig. , 209 F.Supp.2d 1106, 1112 (D. Colo. 2002) (citations omitted).
"A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001. Such claim is deemed allowed unless a party in interest objects. See 11 U.S.C. § 502(a). "The objecting party has the burden of going forward with evidence supporting the objection." In re Geneva Steel Co. , 260 B.R. 517, 524 (10th Cir. BAP 2001), aff'd , 281 F.3d 1173 (10th Cir. 2002) (citation omitted). The "evidence must be of probative force equal to that of the allegations contained in the proof of claim." Id. (citation omitted). "However, an objection raising only legal issues is sufficient." Id. (citation omitted). Once the objecting party has reached this threshold, "the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." In re Harrison , 987 F.2d 677, 680 (10th Cir. 1993) (citation omitted). "The standard of proof is a preponderance of the evidence." In re Mineral Res. Int'l, Inc. , 565 B.R. 684, 690 (Bankr. D. Utah 2017) (citation omitted).
*901 II. Priority Status Under 11 U.S.C. § 507(a)(4)
11 U.S.C. § 507(a)(4), in pertinent part, affords priority status to:
allowed unsecured claims, but only to the extent of $ 12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--
(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual ....
(emphasis added) (footnote omitted).
The outcome of this case turns on the meaning of the word "earned." Courts that have interpreted the meaning of "earned" in this context "have uniformly held that wages are 'earned' when the services are provided...." In re Aquatic Pools, Inc. , No. 15-11406 T11, 2016 WL 3193648, at *2 (Bankr. D.N.M. May 27, 2016) (collecting cases). This is true regardless of when the wages for those services are paid. In re Golden Gate Cmty. Health , 577 B.R. 567, 570 (Bankr. N.D. Cal. 2017) (citing In re Idearc Inc. , 442 B.R. 513 (Bankr. N.D. Tex. 2010) ; 9D Am. Jur. 2d Bankruptcy § 3308 (August 2017) ). Indeed, "[i]f an employee's right to wages arises at a particular point in time but payment is deferred until a later date, the wages are 'earned,' for priority purposes, when the right to receive payment occurs regardless of when, if ever, actual payment takes place." Id. ; see also In re Cardinal Indus., Inc. , 160 B.R. 83, 85 (Bankr. S.D. Ohio 1993) (holding that an employee's commissions were earned when he performed the services that gave rise to the right to the commissions, even where half of the commissions were payable when the sale was made, and the remaining half were payable on the contingency that the customer made future payments to the debtor-company").
Greenberg cites only one case pertaining to when commissions are earned: "The point at which commissions are 'earned' can vary depending upon the particular contract between the parties at issue." In re Pittston Stevedoring Corp. 40 B.R. 424, 428 (Bankr. S.D.N.Y 1984). Notably, Pittston Stevedoring involved a claim for contributions to an employee benefit fund, not for employee wages or commissions. The question before the Pittston Stevedoring court was whether the claim, which was based on services not rendered within the 180 days pre-petition but discovered through an audit during that period, was entitled to priority status under 11 U.S.C. § 507(a) as either a contribution to an employee benefit plan or as employee wages or commissions.
In concluding that the claim was not entitled to priority status under either subsection of 11 U.S.C. § 507(a), the Pittston Stevedoring court examined In re Seventh Avenue South, Inc. , 10 B.R. 289 (Bkrtcy. W.D.Va. 1981). The commissions at issue in Seventh Avenue South could not be calculated until a final tally of credits, returns, and adjustments was completed. Distinguishing Seventh Avenue South , the Pittston Stevedoring court found that the commissions in that case were not capable of being ascertained prior to the priority period:
The pivotal factor motivating the court in Seventh Avenue South to date the point of 'earnings' in that particular case as of the date the commissions were calculated (based apparently on the particular labor contract between those parties) was that they could not have been calculated earlier on.
Pittston Stevedoring , 40 B.R. at 428. It was in this context that the Pittston Stevedoring court stated that the point at which *902 commissions are "earned" can vary depending upon the particular contract between the parties at issue.
Here, Greenberg has offered no evidence to suggest that there is a contract between himself and the Debtor which dictates when commissions are earned. Both the compensation agreement[2] and compensation and incentive plan speak only to when commissions are paid and are silent as to when commissions are earned . Even the Debtor's employee handbook, which Greenberg construes as a contract between the parties, details only when commissions are paid .[3]
Greenberg's right to receive the commission at issue arose when the Debtor and the USDA entered into the contract on November 10, 2016, and the amount of the commission was ascertainable immediately upon the contract's execution. Thus, Greenberg's commission was earned 194 days pre-petition. The fact that the commission was not payable until a later date and was contingent upon a future event is irrelevant for purposes of determining whether Greenberg's claim is entitled to priority status under 11 U.S.C. § 507(a). While the Court acknowledges the unfortunate result that Greenberg's commission was earned a mere 14 days before the priority period, it must guard against construing statutory priority too broadly and engaging in ad hoc judicial activism. See In re S. Star Foods, Inc. , 144 F.3d 712, 716 (10th Cir. 1998).
CONCLUSION
Accordingly, it is
ORDERED that Greenberg's Motion for Summary Judgment (Doc. No. 360) is denied.
IT IS FURTHER ORDERED that the Debtor's Motion for Summary Judgment (Doc. No. 354) is granted. Judgment shall enter in favor of the Debtor and against Greenberg, sustaining the Debtor's Objection to Proof of Claim No. 8-1 (Doc. No. 296). Proof of Claim 8-1 shall be allowed as a general unsecured claim in the amount of $ 25,028.92.
IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

Greenberg's affidavit in support of his motion for summary judgment asserts that the USDA paid the Debtor on November 26, 2016. Rodger Cree's affidavit in support of the Debtor's motion for summary judgment asserts that the USDA paid the Debtor on November 29, 2016. Although there is a discrepancy in the date of payment, the discrepancy is not material, as both dates fall within the 180-day period prescribed by 11 U.S.C. § 507(a)(4).

The compensation agreement references Greenberg's employment agreement, a copy of which was not provided to the Court.

Greenberg argues that the two provisions in the Debtor's employee handbook for payment of commissions contradict one another. The Court disagrees.